## Havens & Geddes Co. v. Marcus P. Diamond et al.

93    557
d102  ¹344

93    557
112   ⁴584

1. FOREIGN CORPORATIONS—*What Is Not Doing Business in this State Within the Statute.*—Where a foreign corporation manufactures goods in a foreign State, and sends drummers into this State who solicit and take orders in this State, and send them to the corporation in the foreign State, where they are passed upon and accepted or rejected, and if accepted the goods are shipped in the foreign State, consigned to the purchaser, this is not doing business in this State within the meaning of our statute regulating foreign corporations doing business in this State.

2. SAME—*May Invoke the Aid of Our Courts to Enforce Legal Rights.*—A foreign corporation which has not done business in this State in violation of our statute, may invoke the aid of our courts to enforce its legal rights.

3. STATUTES—*When in Conflict with the Interstate Commerce Clause of the Federal Constitution.*—If our statute were intended to prohibit such taking of orders in this State by foreign corporations, until compliance with the regulations of our statute, it would be in conflict with the interstate commerce clause of the Federal Constitution.

4. SAME—*Province of the Appellate Court in Regard to the Constitutionality of.*—While the constitutionality of a statute can not be

determined by the Appellate Court, yet where two reasonable but inconsistent constructions of a statute are there contended for, one of which would be repugnant to the constitution and the other would not, it is the duty of the Appellate Court to adopt that interpretation of the statute which will harmonize with the constitution.

Replevin.—Appeal from the Circuit Court of Woodford County; the Hon. JOHN H. MOFFETT, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded. Opinion filed February 13, 1901.

J. A. RIELY, attorney for appellant; WOOD BROS., of counsel.

It is assumed that the legislature has power to prohibit foreign corporations from doing business in the State. It may impose upon them such terms, conditions and burdens as it pleases before they can do business. But it may not prohibit its citizens from doing business with them in the foreign State. The People v. Thurber, 13 Ill. 554; Walker v. Springfield, 94 Ill. 364; Hartford Ins. Co. v. Peoria, 156 Ill. 428; Allgeyer v. Louisiana, 165 U. S. 578.

The State of Illinois has never seen fit to put a ban upon the foreign corporation. The language of our statutes has been that of regulation—not prohibition. The corporations of other States have been given a hospitable reception here. Stevens v. Pratt, 101 Ill. 216; Female Academy v. Sullivan, 116 Ill. 383; Granite State Ass'n v. Lloyd, 145 Ill. 622; Barnes v. Suddard, 117 Ill. 237.

The statute of 1897, amended in 1899, practically put the foreign corporation doing business in the State on an equality with the domestic corporation. It taxed it no higher; it exacted from it the same fees and no more. It made compliance, as it had power to do, a condition for the use of its courts. Hurd's Statutes, 1899, p. 447.

In construing a statute the presumption must always be in favor of its validity and constitutionality unless the contrary is clearly demonstrated. Potter's Dwarris, 1st Ed., 145; The People v. Thompson, 155 Ill. 464; Hawthorn v. The People, 109 Ill. 302; Coit & Co. v. Sutton, 102 Mich. 325; Blakeslee Mfg. Co. v. Hilton, 5 Pa. Supr. 191; Mearshorn v. Lauber Co., 187 Pa. St. 12; Cooper Mfg. Co. v.

Ferguson, 113 U. S. 727; Bamberger v. Schoolfield, 160 U. S. 167.

Delivery of goods to the common carrier at Indianapolis consigned to David Diamond, was delivery to him by appellant, in that city.   1 Benjamin on Sales, 1st Ed., 466, Sec. 505, and cases cited; Stafford & Bro. v. Walker, 67 Ill. 83; Wolf v. Dietzsch, 75 Ill. 206; Merchants' Despatch Co. v. Smith, 76 Ill. 542.

.The contract of sale by appellant to David Diamond was made at Indianapolis, not elsewhere, and at the time his order was accepted.   The order, first sent by him to appellant by mail, and again through the traveling man, Hopewell, by mail, was in law, given at Indianapolis.   There the offer was made; there the parties gave their assent to the contract of sale; there it was fully executed by the delivery of the goods;   there the price of the goods was payable, and there the business was done.   6 Thompson on Corporations, Sec. 7879; 1 Parsons on Contracts, 7th Ed., 475; Marsh-Davis Co. v. Strobridge, 79 Ill. App. 687; Hart v. Foundry Co., 72 Miss. 809.

The act of the traveling man, Hopewell, in taking the order of David Diamond, in Illinois, and sending to appellant in Indianapolis for its approval there, if acts of business, could only be the doing of business by Hopewell, against whom there was no prohibition.   Allen v. Tyson-Jones Co., 4 S. W. Rep. 393; Tyson-Jones Co. v. Kemsler, 91 Tex. 26.

The procuring of orders by traveling agents in this State, with or without samples, or the sale of goods in this State by samples, when the orders are sent to a foreign corporation for its approval in the foreign State, from which the goods are shipped  by common carrier to the purchaser in this State, does not constitute "doing business" in this State where such foreign corporation has no place of business in this State.   Tallapoosa Lumber Co. v. Holbert, 5 N. Y. App. Div. 559; Novelty Mfg. Co. v. Connell, 88 Hun, 256; M. B. Faxon Co. v. Lovett, 60 N. J. L. 128; Coit & Co. v. Sutton, 102 Mich. 327; Mearshon & Co. v. Lauber Co., 187 Pa. St. 12; Kilgore v. Smith, 122 Pa. St. 57; Robbins v.

Taxing Dist., 120 U. S. 489; Brennan v. Titusville, 153 U. S. 289; Wolf-Dreyer Co. v. Bigler, 192 Pa. St. 466; Doty v. Mich. Cent. R. R., 8 Abbott, Pac. Rep. 427; Davis & Rankin Co. v. Dix (Mo.), 64 Fed. Rep. 412; Gunn v. Machine Co. (Ark.), 20 S. W. Rep. 591; Bateman v. Milling Co. (Tex.), 20 S. W. Rep. 931; Lyons-Thomas Co. v. Reading Co., 21 S. W. Rep. 300; Caesar v. Capell (Tenn.), 83 Fed. Rep. 403; Sullivan v. Sheehan, 89 Fed. Rep. 247; Reeves v. Harper, 43 La. An. 516; Blakeslee Mfg. Co. v. Hilton, 5 Pa. Super. 191; Milan Milling Co. v. Gorten, 93 Tenn. 594; Wilcox Cordage Co. v. Mosher, 114 Mich. 66; Beard v. Union Am. Co., 71 Ala. 60; Gates Iron Works v. Cohen, Ed. 43, Pac. R. 667; Hyde v. Goodnow, 3 Comstock, 266; Freehold Mtg. Co. v. Pierce, 49 La. An. 390; Scottish Mortg. Co. v. Ogden, 49 La. An. 8; Electric Lighting Co. v. Rust, 117 Ala. 680; Mandel v. Swan Land Co., 154 Ill. 188; St. L. & T. R. R.Co. v. Fire Assn., 60 Ark. 325; Cretau v. Foote-Thorne Co. (N. Y.), 40 App. Div. 215; Barse Live Stock Co. v. Range Co., 16 Utah, 59.

JOSEPH A. WEIL, attorney for appellees.

The fact is admitted that appellant was a foreign corporation, located at Indianapolis, Indiana, and that such foreign corporation had not complied with the requirements of the law of this State applicable to foreign corporations doing business in this State. It is admitted that appellant never had a place of business or property in Illinois, nor had it in any manner whatsoever complied with any of the requirements of the statute pertaining to foreign corporations doing business in this State, entitled " An act to amend an act entitled ' An act to require every foreign corporation doing business in this State to have a public office or place in this State at which to transact its business,' subjecting it to a certain condition, and requiring it to file its articles or charter of incorporation with the Secretary of State, and to pay certain taxes and fees thereon." Act approved May 26, 1897, in force July 1, Laws 1897, 174; also act approved April 22, 1899, in force July 1, Laws 1899, 118; Thompson Co. v. Whitehed, 185 Ill. 454.

Havens & Geddes Co. v. Diamond.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was an action of replevin brought by appellant against appellee to recover the possession of certain merchandise. Defendants pleaded *non cepit, non detinet*, and that at and before the commencement of this suit appellant was a foreign corporation, incorporated for the purpose of gain under the laws of the State of Indiana, and that it had not designated some person as its agent in this State on whom service of legal process could be had, nor maintained a public office in this State for the transaction of its business, and where proper books were kept to enable it to comply with the constitutional and statutory provisions governing such corporations, nor filed in the office of the Secretary of State a certified copy of its charter or articles or certificate of incorporation, nor paid into the office of the Secretary of State upon the proportion of its capital stock represented by its property and business in Illinois, fees equal to those required of similar corporations formed within and under the laws of this State, as required by law. To this latter plea appellant replied that at and before the commencement of this suit it was not doing or transacting any business within the State of Illinois, nor has it since the commencement of this suit been engaged in, doing or transacting any business whatever within the State of Illinois. On this replication and on the first and second pleas issues were joined. A jury was waived and plaintiff's proofs heard. Defendants offered no proofs. Defendants then demurred to the evidence, and the trial judge sustained the demurrer and decided appellant had been doing business in the State of Illinois, and under section 4 of the act relating to foreign corporations, in force July 1, 1899, it could not maintain any action in this State, and therefore could not maintain this suit. At the same time plaintiff presented propositions of law, upon which the court ruled, holding, in effect, plaintiff had been doing business in this State, and could not maintain an action here.

Appellant sold the goods in question to David Diamond,

of Minonk, Illinois, on credit, about the first of January, 1900. The latter sold to appellees, his brothers, and absconded, without paying for the goods. There was evidence tending to show that the credit was obtained by means of false and fraudulent representations entitling appellant to rescind the sale and recover the goods, upon discovering the fraud, and that appellees were not innocent purchasers for value. The weight of that evidence we need not determine, as the decision of the trial court was put solely upon the ground that appellee was a foreign corporation and had been doing business in this State, and as it did not plead or prove it had complied with said act of 1899, it could not sue in the courts of this State.

Appellant is engaged in the manufacture and sale of clothing and other merchandise. Its place of business is Indianapolis, Indiana. It sends traveling salesmen into this State, with trunks of samples of the goods for sale by appellants. Each salesman visits the chief towns within certain territory allotted to him, calls upon retail merchants in that line of business, exhibits the samples and solicits orders for goods. If successful he takes the orders in writing, and transmits them to the house at Indianapolis. Unless the proposed customer is well known as a reliable man, the traveling salesman also takes from him a property statement, showing the details and value of his property, and the amount and details of his liabilities, and this statement is sent with the order for goods. Upon the arrival of the order and statement at the house in Indianapolis, they are placed in the hands of those conducting appellant's credit department for examination. If they conclude the credit should be extended, the order is then accepted by appellant and the goods are packed and shipped on board cars at Indianapolis, consigned to the purchaser. If the credit department refuses the credit the order is declined, and not filled. Appellant has no place of business in Illinois, and no goods here except the samples carried by the traveling salesmen. These drummers have no power to make a contract to sell goods, but only to solicit orders to be forwarded

to Indianapolis for acceptance or rejection by appellant there. They are not sent out as collecting agents, and do not carry accounts for collection, but if a customer offers them payment they take it, and give a receipt for it, and forward it to the house at Indianapolis to be there credited on the customer's account. Appellant has pursued this course in Illinois for a number of years.

Section 2 of the act of 1899 begins as follows :

" Every corporation for pecuniary profit formed in any other State, territory or country, before it shall be authorized or permitted to transact business in this State, or to continue business therein, if already established, shall " etc.

Section 3 begins :

" Every company incorporated for purposes of gain under the laws of any other State, territory or country, now or hereafter doing business within this State, shall " etc.

After these quoted words follow at length the various requirements with which the third plea averred appellant had not complied. Section 4, after providing a penalty for failing to comply with the conditions of the act, concludes as follows :

" In addition to which penalty, on and after the going into effect of this act no foreign corporation as above defined which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this State upon any demand, whether arising out of contract or tort."

As appellant was a foreign corporation organized for pecuniary profit, and had not complied with the requirements of this act, it can not maintain this action if it was doing business in this State within the meaning of those words as used in the act, (J. Walter, Thompson Co. v. Whitehed, 185 Ill. 454,) provided, also, said act is not in conflict with the Constitution of the United States.

In a certain sense it is no doubt doing business with a man to call upon him, exhibit samples of goods, discuss prices and get the party to give an order requesting a foreign corporation to ship him certain goods on certain terms, but in a more important sense no business is then trans-

acted.    If, in the present case, when David Diamond's order reached appellant in Indianapolis, credit had been refused, and the order rejected, it would be entirely proper to say the house had declined or refused to do business with him. Every element of the contract was completed in Indianapolis.    It was there appellant accepted the order, and contracted to sell the goods as ordered; the goods were then shipped to the purchaser as consignee, and the title to the goods passed to the purchaser upon their delivery to the railroad so consigned, and when the goods reached this State they did not belong to appellant; and payment was to be made at Indianapolis.    In every important sense the business was all transacted in Indianapolis.    So far as we are advised the question is one of first impression in the courts of appeal of this State; but it is generally held elsewhere that such provisions in statutes and constitutions forbidding a foreign corporation to do business in the State without complying with prescribed conditions do not include the taking of orders or making of sales by sample by agents of foreign corporations coming into the State for that purpose.    To construe our statute to include these transactions as doing business within this State, would make it violate that provision of the Constitution of the United States which grants to Congress power to regulate commerce among the several States.    (Robbins v. Shelby Taxing District, 120 U. S. 489; Brennan v. Titusville, 153 U. S. 289.)    The position of appellees here is embodied in the dissenting opinion in Robbins v. Shelby Taxing District, *supra*, and received the disapproval of the court.

The authorities upon this subject, while substantially harmonious in their results, reach their conclusions in different ways.    In Mearshon & Co. v. Lumber Co., 187 Pa. St. 12, that court quotes with approval from Blakeslee Manufacturing Co. v. Hilton, 5 Pa. Sup. 184, as follows:

"The words, 'doing any business,' as used in the act, should not be construed to mean taking orders or making sales by sample by agents coming into our State from another for that purpose.    To hold otherwise would make the act offend against the Constitution of the United States,

as imposing unlawful restrictions on interstate commerce. * * * A corporation of one State may send its agents to another to solicit orders for its goods or contract for the sale thereof, without being embarrassed or obstructed by State requirements as to taking out licenses, filing certificates, establishing resident agencies, or like troublesome or expensive conditions."

Then in the principal case the court said:

" The plaintiff is a corporation duly incorporated in the State of Michigan.  Its manufacturing operations are there conducted; its capital is there invested.  None of it is invested here.  The order for the goods in question was given to its salesman and agent in Pennsylvania, and by him sent to the plaintiff, who executed the order in Michigan. * * * This is not a doing of business in this State which makes it necessary to comply with the provisions of the act."

To the same effect are Kilgore v. Smith, 122 Pa. St. 48, and Wolff-Dryer Co. v. Bigler & Co., 192 Pa. St. 466.  In Coit & Co. v. Sutton, 102 Mich. 324, the plaintiff was in the business of shipping from Illinois, goods manufactured in Illinois, to its customers in Michigan, on orders given it by mail, or taken by its agents in Michigan.  It made the contract in Michigan and delivered the goods in Michigan. It had not complied with a Michigan statute which required certain acts of a foreign corporation, and provided its contracts should be void till said requirements were met. The court held this statute could not be applied in violation of the Federal Constitution, and hence the act did not apply to foreign corporations, whose business in Michigan was merely selling through itinerant agents, and delivering commodities manufactured outside the State.  In Tallapoosa Lumber Co. v. Holbert, 5 N. Y. Sup. Ct. App. Div. 559, that court said:

" The procuring of orders for goods by commercial agents traveling in this State, which orders have to be transmitted to the home office in another State for approval there, and then the goods shipped from the home place of business to the purchaser in this State, where the foreign corporation has no office or place of business, does not, I think, constitute ' doing business in this State,' within the meaning of the statute."

To the same effect is Novelty Manufacturing Co. v. Connell, 88 Hun, 254. In Maxwell & Co. v. Edens, 65 Mo. App. 439, it was held that where a foreign corporation, entirely non-resident, sells goods in that State through a traveling salesman or drummer, it is entitled to sue for the purchase price without complying with the statutory regulations applying to foreign corporations doing business in the State. In Toledo Commercial Co. v. Glen Manufacturing Co., 55 Ohio St. 217, the Supreme Court of Ohio said:

" The holdings are numerous that it is the right of persons and of corporations residing in one State to contract and sell their commodities in another, unrestrained, except where restraint is justified under the police power. This rule does not deny the power of any State to impose conditions upon the right of foreign corporations to establish themselves within its boundaries for the performance, generally, of their business, involving the exercise of corporate franchises and powers, but does hold that the selling through traveling agents and delivering of goods manufactured outside of the State, does not fall directly within the purview of their corporate powers. The pertinent provision of the Federal Constitution is that ' the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States,' and that instrument gives to Congess power ' to regulate commerce   *   *   * among the several States.' The distinction to be noted is that the sale and delivery of merchandise is a right possessed in common by all the citizens of the State. The exercise of the corporate franchises and powers is not. It is a special privilege conferred only on corporations. And the sale and delivery in one State, of goods manufactured in another State, by a citizen of that State, is interstate commerce."

In Milan M. & M. Co. v. Gorten, 93 Tenn. 590, it was held that where a foreign manufacturing corporation contracts with a resident to furnish, deliver and put in position for him within that State certain mill machinery, and accepts for the work and materials notes secured by mortgage on real estate within the State, the transaction is interstate commerce, and not subject to State laws, and the notes and mortgage are valid and enforceable, notwithstanding a non-compliance by the foreign corporation with

Havens & Geddes Co. v. Diamond.

regulations imposed by the State. In Davis & Rankin B. & M. Co. v. Dix, 64 Fed. Rep. 406, the court said:

"The State legislature can not deny a non-resident citizen the right to send a canvassing agent here to solicit, by sample or otherwise, contracts for the sale of goods or machinery to be manufactured without the State and shipped into and delivered in the State by the merchant or manufacturer. A corporation stands upon the same footing in this respect as an individual."

In Beard v. Union and Am. Publishing Co., 71 Ala. 60, it was held that receiving subscriptions to a newspaper or collecting the money therefor, although the paper was published in a foreign State by a corporation, was not doing business in Alabama within the meaning of a constitutional restriction. The same principle was applied in Doty v. M. C. R. R. Co., 8 Abb. Pr. 427, to the sale of tickets in New York State by a railroad company whose entire road and traffic were beyond the limits of the State. The same doctrine was announced in Arkansas in Gunn v. White Sewing Machine Co., 20 S. W. R. 591. In Bateman v. Western Star Milling Co., 20 S. W. R. 930, a corporation domiciled in Kansas had solicited business in Texas, and sold and shipped merchandise to parties there. The Court of Civil Appeals of Texas held that this was interstate commerce;. and that a statute resembling our own in principle was void, as applied to such facts, and could not deprive the corporation of the right to bring the action. The same court applied the like principle in Lyons-Thomas Hardware Co. v. Reading Hardware Co., 21 S. W. R. 300, and Zuberbier Co. v. Harris, 35 S. W. R. 403. That orders taken by drummers for a foreign corporation, sent to the foreign State for approval, are not within the statute requiring certain things of a foreign corporation precedent to its doing business, was held in Murphy Varnish Co. v. Connell, 10 Misc. R. (N. Y.) 553; Am. Broom and Brush Co. v. Addickes, 19 do. 36; National Knitting Co. v. Brummer, 20 do. 125. See also In re Spain, 14 L. R. A. 97 and note; Cone E. & C. Co. v. Poole, 24 L. R. A. 289, and note on page 295; Kindel v. Beck & Pauli Lith. Co., 24 L. R. A. 311 and note, and 13 Am. & Eng. Ency. of Law, second ed., 870.

We do not lose sight of the fact that the constitutionality of the statute is not raised by the appeal to this court. But this is not the question presented or decided. We are called upon to determine what is meant in this statute by "doing business in this State." We find that in one sense appellant was doing business in this State, and in another sense it was not. Appellees argue that the former is the more reasonable meaning of the words. Appellant argues that we can not adopt that meaning because the statute so construed would contravene the interstate commerce clause of the constitution. The pertinent rule of construction is, if two reasonable but inconsistent interpretations of a statute are possible, and one would leave the statute unconstitutional and void, and the other would be in harmony with the constitution, the meaning which harmonizes the statute with the constitution must be adopted. (Endlich on the Interpretation of Statutes, Secs. 178–181.) We are required to decide which meaning to adopt, and we certainly can not be barred from applying this rule of construction by the mere fact that if appellant wished to deny the validity of the statute it should have appealed directly to the Supreme Court. Applying the rule just stated we adopt the meaning of the words "doing business in this State," which leaves the statute valid, and hold that appellant had not been doing business in this State.

Our former statute of 1897 upon the same subject contained a proviso that it should not apply to drummers or traveling salesmen soliciting business in this State for foreign corporations which are entirely non-resident. This provision was omitted when the statute was amended by the act of 1899, and it is argued that the omission of these words from the later statute, shows a legislative intention that said exception should no longer exist. We think it quite as reasonable to assume that the legislature omitted the proviso because aware of the fact that the act could not legally be construed to cover such transactions by drummers and the proviso was unnecessary.

A foreign corporation which has not done business in

this State in violation of the statute, may invoke the aid of our courts to enforce its legal rights. The act of bringing and conducting the suit is not doing business in this State within the prohibition of the statute. (John Spry Lumber Co. v. Chappell, 184 Ill. 539; M. B. Faxon Co. v. Lovett Co., 60 N. J. Law 128; Barse Live Stock Co. v. Range Valley Cattle Co., 16 Utah, 59; and cases cited in note to 24 L. R. A. on page 289.)

Nothing herein said should be construed as holding that the alleged inability of appellant to maintain the suit was properly raised by the third plea.

The judgment is reversed and the cause remanded for a new trial.