## Union Cloak and Suit Co. v. Edward Carpenter et al.

1. FOREIGN CORPORATIONS—*Must File with the Secretary of State Copy of Charter Before Entitled to Maintain Actions at Law in This State.*—Foreign corporations must file in the office of the Secretary of State a copy of their charter, and designate a person as representative, upon whom process may be served, and have and maintain a public office in this State, before they can maintain actions at law in this State.

**Trial of the Right of Property.**—Appeal from the County Court of Cook County; the Hon. R. H. LOVETT, Judge presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed. Opinion filed May 23, 1902.

**Statement of the Case.**—This is an action brought in the County Court of Cook County February 7, 1901, for the trial of the right of property under the provisions of the statutes of the State of Illinois.

The action was originally brought by appellant against Edward Carpenter and Ernest J. Magerstadt, sheriff of Cook county.

February 13, 1901, an order was made in the United States District Court for the Northern Division of Illinois, empowering Burt G. Thompson, receiver of the estate of Kate Farris, and James A. Dwyer, doing business as the Columbia Cloak Company, to appear and defend the interests of the bankrupt estate in this proceeding. And on the same day, by stipulation filed in the case, the sheriff was dismissed as a defendant, and Burt G. Thompson, receiver in bankruptcy, was substituted as defendant in his place and stead, and on the same date his appearance was entered as one of the defendants in said cause.

Upon the trial it was admitted by all the parties to the proceeding that the plaintiff, the Union Cloak & Suit Company, was a corporation existing under and by virtue of the laws of the State of New Jersey.

The evidence also shows that the plaintiff had not filed with the Secretary of the State of Illinois a copy of its articles of incorporation, and had not received from the

Secretary of State, of said State, permission to do business in the State of Illinois.

The evidence shows that on the 18th and 20th of December, 1900, the plaintiff shipped from New York to Kate Farris and James Dwyer, doing business as the Columbia Cloak Company, in South Chicago, Illinois, two bills of consignment goods marked "memorandum goods;" that these were the only shipment of goods made in that manner by the plaintiff to said Columbia Cloak Company.

The evidence shows that accompanying the goods so shipped was a letter written by the plaintiff to Miss Kate Farris, one of the members of the said Columbia Cloak Company, from the office of the plaintiff in the city of New York, showing the disposition to be made of said goods.

The evidence shows that for goods sold, returns were to be made every Saturday night, and that goods not sold were to be returned to the plaintiff.

The evidence shows that the word "memorandum," as written in the bill of goods shipped by plaintiff, as accepted by merchants, means that it is simply a memorandum of consignment goods.

The evidence shows that in pursuance of plaintiff's understanding of its right in the matter, William B. Tate, its secretary and treasurer, came from New York to South Chicago, arriving here on the 28th day of January, 1901, and began packing the goods in question for re-shipment to New York, and had about one-half of the goods boxed when they were levied upon by the sheriff.

The record shows that at the trial, on the motion of the attorney for the defendants (appellees) the said cause was dismissed, on the ground and for the reason that the claimant, or plaintiff, was a foreign corporation and not entitled to do business in this State, not having complied with the laws of this State, and not entitled to maintain this action.

Under this statement the main question presented to this court is whether or not the plaintiff was doing business in this State in contravention of the laws of this State relating to foreign corporations, in force July 1, 1899.

It is conceded that appellant has no place of business in the State of Illinois; that it had no goods here except those sought to be recovered in this action, and which were shipped from its place of business in New York City on the 18th and 20th of December, 1900.

The statutes of this State provide, in substance, that .every corporation for pecuniary profit formed in any other State, before it shall be authorized, or permitted to transact business in this State, shall file in the office of the Secretary of State a copy of its charter, or articles of incorporation, and shall designate some person as its agent or representative in this State on whom process may be served, and shall have and maintain a public office in this State, etc. Statutes, Chapter 32, Paragraph 67 b and 67 c.

In addition to a penalty prescribed for a violation of the provisions of the act, the statute further provides:

"That no foreign corporation, as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of contract or tort." Statutes, Chapter 32, paragraph 67 d.

ROBBINS & WHITTLESEY, attorneys for appellant.

L. W. CARPENTER, attorney for appellees.

MR. JUSTICE SHEPARD delivered the opinion of the court.

It seems plain that by the transaction in question the appellant was engaged in doing business in this State within the meaning and intent of the statutes in force July 1, 1899, relating to foreign corporations, referred to in the foregoing statement of facts.

The testimony of Mr. Tate, the secretary and treasurer of appellant corporation, is that the goods were not sold to the Columbia Cloak Company, but that the title thereto remained in the appellant all the time, subject only to the right of the Columbia company to sell such of them as they could, and when sold, to send the money to appellant, and if not sold, then to be returned in kind to appellant.

The possession of the goods by the Columbia Company was regarded by both, appellants and the Columbia Company, as the possession of appellants. This was shown by appellants in attempting, as testified by Mr. Tate, to box and remove the goods as their own, from the store of the Columbia Company, with the consent and assistance of the latter company.

Tate also testified:

"It was not the price for which the consignee was to sell these goods, it was our selling price. That is simply a memorandum; it is marked 'memorandum goods.' It is a memorandum for the information of the Columbia Cloak Company. They could sell at whatever price they pleased. They were not held accountable for this price; they were held accountable for the goods, and in the event they sold the goods they were accountable to us for that much money.

Q. Were they held accountable for this price? A. No, they were held accountable for the goods, and in the event they sold the goods, then they were accountable to us for that much money.

Q. They were accountable for the price? A. Yes, sir; either the goods or the price had to be paid.

They had a right to sell the goods to anybody they could for our account, and when they sold they sent us the money; if not sold they returned the goods. They gave us a memorandum of each particular item and what they sold, every Saturday night, and the amount of money therefor.

Q. Isn't it a fact that these goods were sent to these people and they were to pay you the price which is upon this bill? A. Not unless the goods were sold. There was no fixed time in which these goods were to be sold, except that they were to report every Saturday night what had been sold and remit therefor, and the balance was to remain, the disposition to be decided upon. They were our goods."

This is further made to appear by the following letter from Mr. Butts, the president of appellant corporation, to Miss Kate Farris, who carried on the business in the name of the Columbia Cloak Company.

"NEW YORK, 12–18th, 1900.
DEAR MISS KATE:
We express to you to-night about 1,500 jackets, capes, skirts, etc., for sale. These goods are sent on memo., and

you can pay for what you sell every week, make up your list of amts. sold each week and send check for same.   Now, I think this will be a good thing for you and us both, and all the expense, or, rather, outlay, you will have is the express.   I agreed with Mr Heath that you would pay express out and freight back, and I am confident you can use almost or quite all of these goods.   Job No. 3 and Job No. 6, golf capes, are old friends, so make a price on them.   Don't let me ever see one of them again.   We have given you cut prices on most everything to enable you to make money on them and make a hurrah sale at the same time.   We will send you a few other things to-morrow.   Wired you to-night so you would be prepared for the sale.   Put some mark on the tickets so you can distinguish easily from your own stock, so that will be easy to make up your weekly reports. Let us know how you get along first few days on them. 704 X jacket, damaged, was $10.00; can you make a profit on it at $3.00?   No. 1226, 876, 1230 R. D. skirts, we have more if you want.   We have a lot of No. 1001 reefers in blues up to 12's, in red up to 12's, 1001 in red and blue up to 10's.   If want will send them.   Will send you some cheap suits and furs and long golf capes to-morrow.   Push this sale and let's see if you can't yet come to the front. Don't fail to send Littenberg the 2nd for note; also take up balance with Wm. and M. this week.

Yours, &c.,

WM. A. BUTTS."

It must, we think, be apparent from the evidence that came from appellant's side of the case, that the Columbia Company was the agent to sell the goods the appellant consigned to it, at retail, at its place of business in South Chicago, and in the State of Illinois.   In other words, that appellant, a New Jersey corporation, was engaged in doing business in Illinois.

It is conceded by appellant that the provisions of the act of 1899, as above set forth, were not complied with by appellant at the time, or before, this suit was begun.

But it is insisted that by such act the legislature assumed only to limit the exercise by a foreign corporation, of the corporate franchise and power within this State, and that the sale and delivery of merchandise and the making of contracts in relation thereto, is a right possessed in com-

mon by all the citizens of the State, and is not thereby interfered with.

The case of Havens & Geddes Co. v. Diamond, 93 Ill. App. 557, is cited as fully sustaining the position of appellant in that respect. A large number of cases in other jurisdictions are referred to by appellant as being more or less in point in favor of one phase or another of its contention.

The Havens & Geddes Company case above referred to was one involving the sale of goods in Indiana by means of orders taken in the State to be approved and filled in Indiana, and, if approved, shipped to this State. Here, in the case at bar, the goods were brought within this State and here displayed and sold. We do not think the case is in point.

The case of Thompson Company v. Whitehed, 165 Ill. 454, seems to us to be conclusive upon the question before us. There, as here, the appellant had not complied with the provisions of the act under which foreign corporations were permitted to do business within this State. There was, also, in the statute, then under consideration (to which the act of 1899 is amendatory), a provision identically the same as the one before us, that no foreign corporations which had failed to comply with the previous provisions of the act, could "maintain any suit or action, either legal or equitable, in any of the courts of this State, whether arising out of contract or tort.".

And it was held, as follows:

"No reason is perceived why the provision of this act should not have full operation. Given such operation, the appellant corporation had no standing in the courts of Illinois to enforce a demand, and the insistence it was entitled to the privileges accorded by the policy of our laws to a domestic or resident creditor is wholly untenable. It had no right to invoke action of any kind, under the laws of this State, in aid of the enforcement of any contract or the collection of any debt. * * * It had not then complied with the conditions fixed by the statutes as a prerequisite to its right to invoke the aid of the courts of this State, and the right of the appellee assignee to retain the possession

of the goods was superior to any right which could be obtained by appellant company by virtue of the writ issued in a suit which it had no legal standing to institute."

We fail to see wherein this is not conclusive of the question before us, and therefore affirm the judgment of the County Court.   Affirmed.