## Black-Clawson Company v. Carlyle Paper Company.

1. FOREIGN CORPORATION—*how statute regulating doing business in Illinois by, construed.* The statute which requires foreign corporations doing business in Illinois to take out a license for that purpose, will receive such construction and enforcement as will not interfere with interstate commerce.

2. FOREIGN CORPORATION—*what not "transacting business" within meaning of statute.* The sale and delivery in this State of machinery and the furnishing of the time of a man to assist and superintend in the erection thereof, does not constitute transacting business in this State within the meaning of the statute regulating foreign corporation doing business in Illinois.

3. ACCORD AND SATISFACTION—*what constitutes.* Where a draft is tendered in full and accepted although qualifiedly, an accord and satisfaction is established.

Assumpsit. Appeal from the Circuit Court of Clinton County; the Hon. Samuel L. Dwight, Judge, presiding. Heard in this court at the August term, 1906. Affirmed. Opinion filed March 15, 1907.

Thomas E. Ford and William Johnston, for appellant.

Louden & Crow and Hugh Vincent Murray, for appellee.

Mr. Presiding Justice Creighton delivered the opinion of the court.

This was an action in assumpsit, in the Circuit Court of Clinton county, by appellant against appellee, to recover a balance of $1,151.79, claimed by appellant to be due it from appellee for machinery sold and delivered and work and material furnished. Trial by jury was waived, and the case was tried by the court without a jury, by agreement of parties, resulting in a finding and judgment in favor of appellee in bar of the action and for costs.

The declaration is in form and substance the common counts, with an itemized bill of particulars attached. To the declaration a number of pleas were filed, but the questions raised on this appeal involve only two of them. One is a plea setting up that appellant was a foreign corporation, transacting business within this State, that it had not complied with our statute in relation to such corporations, and that it had no certificate from the Secretary of State authorizing it to do business within the limits of this State. The other is a plea of accord and satisfaction.

Appellant was a corporation organized under the laws of the State of Ohio, engaged in the manufacture and sale of paper mill machinery; its offices and factory were at Hamilton, Ohio, and it had no office or place of business, nor any agency or agent within the State of Illinois. Appellee was a corporation organized under the laws of the State of Illinois, engaged in the manufacture of paper at Carlyle, Illinois. Appellant company got into communication with appellee company by means of a letter written by appellee to

Black-Clawson Co. v. Carlyle Paper Co.

appellant in which it was stated that appellee would like to see appellant in regard to some paper mill machinery. In response to this letter appellant sent its sales manager to Carlyle, and he entered into negotiations with appellee, resulting in a contract whereby appellant agreed to furnish a large number of machines and appliances for the equipment of appellee's mill, same to be delivered free on board cars at Hamilton, Ohio, appellee to pay the freight. The contract also provides that appellant "will furnish the time of a competent man to superintend and assist in the erecting of the machinery at appellee's mill, appellee to pay his traveling expenses and board while on the job, appellee to furnish him with all necessary help at its expense, to facilitate the work; time of man to be limited to thirty days from the time he should leave appellant's shops until he should return; after this time appellee to pay appellant for his time at the rate of fifty cents per hour." The contract price which appellee agreed to pay was $13,500. The contract was written up and signed at Carlyle. The machines and appliances, consisting of about ten carloads, were delivered and the man to superintend and assist in erecting the machinery followed and performed the specified services. The evidence disclosed that appellant had furnished some other machinery to parties in Illinois since 1899.

Section 67b and a number of following sections of chapter 32, Hurd's Statutes, 1905, provide, "that before any foreign corporation for profit shall be permitted or allowed to transact any business, or exercise any of its corporate powers in the State of Illinois, * * * ," such corporation shall do a number of specified things, and procure a certificate from the Secretary of State authorizing it to transact business within this State. The statute provides certain penalties for its violation, and provides that in addition to such penalties, if any such corporation shall fail to comply with the statute, no suit may be maintained by it either at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort, in any court in this State. It is admitted that appellant had not complied with the statute.

The question is, did appellant transact business in the State of Illinois, within the meaning of the statute. So far as the reported cases disclose, this statute has not often been before the courts of this State and the cases we have do not fully interpret the statute when applied to the particular facts of the case at bar. A large number of States have statutes in their main features substantially like ours, and in the aggregate there are scores of cases dealing with the question of what constitutes the transaction of business within the meaning of such statutes. We think all courts agree that these statutes must receive such construction and enforcement as will not interfere with interstate commerce, and almost all agree that the sale and delivery of goods or manufactured commodities, not properly subject to police surveillance, by a citizen or corporation of one State to a citizen or corporation of another State is interstate commerce. In Havens & Geddes Co. v. Diamond, 93 Ill. App., 557, it is held that where a foreign corporation manufactures goods in a foreign State, and sends drummers into this State who solicit and take orders in this State, and such orders are accepted and the goods consigned to the purchaser, this is not doing business in this State within the meaning of our statute regarding regulating foreign corporations. In Spry Lumber Company v. Chappell, 184 Ill., 539, it is said: "The John Pritzlaff Hardware Company, a corporation organized in the State of Wisconsin, had sold goods to the firm of Gregg Bros. & Campbell, in consequence of which they became indebted to it, and the amount of its judgment resulted from such sale and delivery of the goods. It had the right to invoke the aid of our courts in the collection of the debts due it." On the other hand, in Union Cloak & Suit Co. v. Carpenter, 102 Ill. App., 339, it is held that a foreign corporation who sent its goods to its agent in this State, to be sold here, at retail, was doing business in this State, within the meaning of the statute. This case turned upon the fact that the goods were sent into this State by the owner, and here displayed and sold. Central Manufacturing Co. v. Briggs, 106 Ill. App., 417, turns upon the plead-

ing. Appellee's plea was good, appellant's demurrer by which it elected to stand, confessed the truth of the plea, and judgment in favor of appellee followed, as matter of course. In J. Walter Thompson Co. v. Whitehed, 185 Ill., 454, appellant was a New Jersey corporation and at the time of instituting the suit and for four years previous thereto had maintained a branch office in this State and transacted business here, and the indebtedness sought to be recovered grew out of contracts entered into in this State. This, it is clear, was not interstate commerce. The above noted are all the Illinois cases bearing directly upon the question that we have been able to find.

It is suggested by counsel, that in this case the contract was signed in this State and that appellant furnished "the time" of a man to superintend and assist in erecting the machinery in this State. These two features, it is contended, make the transaction more and other than interstate commerce.

Cooper Manufacturing Co. v. Ferguson, 113 U. S., 727, was a case which arose under a Colorado statute in substance the same as ours, with respect to the question here under consideration. In that case it appeared that the Cooper Manufacturing Company was an Ohio corporation engaged in the manufacture of steam engines and other machinery; that it sent its agent into the State of Colorado and there entered into a contract, in writing, with Ferguson and another, who were citizens of Colorado, by which it was agreed that the Cooper Manufacturing Company should sell and deliver to Ferguson and his associate a steam engine and other machinery, for a specified price; that default was made in payment; that the Cooper Manufacturing Company instituted suit to recover, and that Ferguson and the other defendant pleaded the Colorado statute. It was held that the transaction was interstate commerce, and Mr. Justice Mathews said: " * * * the construction claimed for the Colorado * * * statute * * * cannot be extended to prevent the plaintiff in error, a corporation of another State, from transacting any business in Colorado,

which, of itself, is commerce. The transaction in question was clearly of that character. It was the making of a contract in Colorado to manufacture certain machinery in Ohio, to be there delivered for transportation to the purchasers in Colorado. That was commerce  * * *  it (Colorado) cannot prohibit it (a foreign corporation) from selling in Colorado, by contracts made there, its machinery manufactured elsewhere, for that would be to regulate commerce among the States." In that case the contract was in writing and was made and signed in Colorado. It in all respects covers the feature of the case at bar with respect to where the contract was made and signed.

Milan Milling * * * Co. v. Gorten, 93 Tenn., 590, arose under a similar statute. In that case, Maish & Gorten Manufacturing Company was an Indiana corporation, and it entered into a written contract with the Milan Milling & Manufacturing Company of Milan in the State of Tennessee, whereby the Indiana company undertook to manufacture, deliver and put in position for the Tennessee company, at Milan in the State of Tennessee, certain milling machinery. The Indiana company furnished the machinery and set it up in the Tennessee company's mill building, at Milan. In subsequent litigation concerning a portion of the contract price for the machinery and services of setting it up, it appeared that the Maish & Gorten Manufacturing Company (the Indiana company) was a foreign corporation and that it had not complied with the Tennessee statute with respect to foreign corporations doing business in that State. The court says: "The Maish & Gorten Manufacturing Company, a foreign corporation, had simply contracted with citizens of Tennessee to furnish certain milling machinery, and to adjust it in position in the mill. This company was in no sense engaged in carrying on business in this State, but was engaged in an act of interstate commerce." This case in all respects covers that feature of the case at bar with respect to the furnishing of the time of a man to superintend and assist in the erection of the machinery. We are of opinion that the transaction between appellant and appellee disclosed

Black-Clawson Co. v. Carlyle Paper Co.

by the record in this case, was not "transacting business within this State," on the part of appellant, within the true meaning of the statute upon which appellee's plea is based.

With respect to the plea of accord and satisfaction, the record discloses that the contract price was to be paid in ten monthly payments of $1,350 each, beginning with August 1, 1904. No controversy appears to have arisen concerning the payments until after the March installment fell due. About the 6th of March appellant called appellee's attention to the fact that it had not remitted the March payment, and reply was made that the matter would receive immediate attention. The mill at this time had not commenced to run, and the remittance was withheld. On the 18th of March the mill was, tested and the superintendent advised that no further payments be made until the machinery did the work for which it had been constructed; and some days later appellee wrote to appellant describing defects in the machinery and demanding that they be remedied, and notified appellant that no more money would be paid until the defects were made good. And on April 13 appellant sent a man to Carlyle and a number of changes were agreed upon and some new machinery agreed to be furnished.

On the 18th day of May, 1905, appellee sent appellant a draft for $2,762.61, accompanied by a detailed statement claiming certain deductions. The draft and letter in which it was inclosed were as follows:

(Draft)   "The First National Bank,
          Carlyle, Ills., May 18th, 1905.   No. 18081.
   Pay to the order of Black-Clawson Company, $2762.61. Twenty-Seven Hundred Sixty-Two and 61-100 Dollars. To Missouri Trust Co., St. Louis, Mo.
                    E. F. ACKERMAN, Cashier."

(Letter)   "The Carlyle Paper Company,
           Chicago office, 245 Sedgwick Street.
The Black-Clawson Co.,
     Hamilton, Ohio:
   As to the matter of interest which you claim we do not in any way recognize your right to same and you certainly

did not entertain the idea that you were entitled to interest until recently. We simply, however, to avoid unnecessary wrangling, have computed interest on the one indebtedness to you from the date that we received notice from you that you would charge interest as you see in the above statement. We went over the whole account when we remitted to you on May 5th. Our deductions were fair and so far as the matters in that letter are concerned we decline to discuss them further, and if we had felt that the balance should have been remitted at that time we would have done so, but through your fault we have been delayed and damaged and we felt that you were not entitled to have your money as originally contracted for.

"Inasmuch, however, as you seem to wish to put us to further annoyance and expense, we have cast up our mutual account and assumed that the remaining two payments are now due, although we do not think that equitably they are. The enclosed is fully explanatory and shows the balance due to you. Our deductions are fair and we send you the enclosed draft for twenty-seven hundred sixty-two 61-100 dollars (2762.61), in the hope that you will after deliberation so consider them. Kindly send us a receipt in full of all demands to date.     Yours truly,

CARLYLE PAPER Co."


To this letter appellant replied as follows:

"Hamilton, Ohio, May 19th, '05.

Carlyle Paper Co.,
    Carlyle, Illinois.

Gentlemen:—Your letter of the 18th received. We will apply draft for $2762.61 as a credit on your account and enclose you herewith statement showing a balance of $1151.79 due us with interest for overdue payments and would kindly ask you to promptly mail settlement. Regarding the fan-pump sold you for throwing stock from the beaters we have not received the pump, B. L., or any notice that it has been shipped back. If returned at once in good condition we will upon receipt of the pump, credit your account with $155.00. We have already instructed our

attorneys to take out a mechanic's lien and take all other necessary steps towards securing our account against you.

> Yours truly,
>
> The Black-Clawson Co."

Appellee repudiated appellant's application of the draft on account, denied owing any thing more than the amount covered by the draft, and appellant kept the draft and brought this suit. The question is, was the trial court warranted in finding that the acceptance and retention of the draft by appellant was in full satisfaction and discharge of its entire demand against appellee.

In the case of the Canton Union Coal Company v. Parlin & Orendorff Company, 215 Ill., 244, the rule as laid down is: "To constitute an accord and satisfaction it is necessary that the money or check, or whatever is offered, should be offered in full satisfaction of the demand, and should be offered in such manner or accompanied by such acts or declarations as amount to a condition that if the party to whom it is offered takes it he does so in satisfaction of his demand. If the offer is made in such a manner, and is accepted, the acceptance will satisfy the demand, although the creditor protests at the time that the amount received is not all that is due or that he does not accept it in full satisfaction of his claim. The creditor has no alternative except to accept what is offered with the condition upon which it is offered, or to refuse it; and if he accepts, the acceptance includes the condition, notwithstanding any protests he may make to the contrary." In Ostrander v. Scott, 161 Ill., 339, it is said: "He (Scott) could not have failed to understand that it (the check) was offered as payment in full, and it was not his privilege to make a new contract for the defendant by writing to him that he had taken the amount and applied it as a part payment. * * * It was the right of the plaintiff to accept the check upon the terms proposed, or to reject it; but there could be no modification of the terms by his will alone, without the concurrence of the de-

fendant." We think the facts of this case bring it clearly within the rules announced in the cases quoted from.

The judgment of the Circuit Court is affirmed.

                                              *Affirmed.*