## Hamilton Machine Tool Company, Appellee, v. Mechanics' Machine Company, Appellant.

### Gen. No. 5,647.

1.  SALES—*when owner not divested of title.*  Where the owner of a machine left it with a company to display as a model to take orders from and authorized a sale thereof under certain conditions if he approved the order, title does not pass to a creditor of such company who took the machine in payment for a debt but knew it was made by the owner, made no attempt to ascertain whether the company owned it, signed no order and received no invoice, the owner having immediately repudiated the transaction.

2.  AGENCY—*when rights of owner of personalty not prejudiced by statements of agent that he owns it.*  A company, with which a

machine is left to display as a model to take orders from, with authority to sell under certain conditions if the owner approves the order, cannot prejudice the owner's rights by representing to a creditor, who takes the machine in payment for a debt, that it is the owner thereof.

3. ASSUMPSIT—*when action lies.* Where a company with which a machine is left by the owner to display as a model and take orders from sells it, without authority, to a purchaser who disposes of it and receives the price, the owner may sue the purchaser in *assumpsit.*

4. AGENCY—*when one with whom goods are left is only a factor.* Where a machine is left with a company to display as a model and take orders from, with power to sell on certain conditions on the owner's approval, such company is only a factor and cannot transfer title to a creditor who takes it in payment for a debt, though such creditor has no notice of the owner's relation to it.

5. FOREIGN CORPORATIONS—*when not doing business in Illinois.* A foreign corporation is not transacting business in this state, where it places machine on display with a company in Illinois and authorizes it to take orders and to sell the display machine under certain conditions and a creditor of the company takes a machine in payment for a debt, which transaction the corporation immediately repudiates and demands payment from the creditor whom it credits with a part payment made by the company.

Appeal from the County Court of Winnebago county; the Hon. LOUIS M. RECKHOW, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed October 15, 1912. Rehearing denied April 3, 1913.

JOHNSON & JOHNSON, for appellant.

A. PHILIP SMITH, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellee is an Ohio corporation manufacturing lathes, etc., with its principal office at Hamilton, Ohio. Appellant is an Illinois corporation engaged in the machinery business with its principal office at Rockford, Illinois. McDowell, Stocker & Co., hereinafter, called the McDowell Co., is a firm engaged in the display and sale of machinery in Chicago. For some

time prior to March, 1909, appellee sold McDowell Co. its machinery outright. Thereafter its goods were placed with McDowell Co. on consignment for display from which orders could be taken, using the display machine as models, the orders to be sent to appellee for filling and the goods shipped to the customer from Hamilton, Ohio, payment to be made by the customer direct to appellee, McDowell Co. receiving a commission on such sales. If, however, the customer could not or would not wait for the goods to be manufactured and shipped from Hamilton, Ohio, and if the order was approved by appellee, it would direct McDowell Co. to ship one of the machines on display in Chicago. Among the machines so shipped by appellee for display by McDowell Co. was a Style B. Engine Lathe. On or about the 16th day of November, 1910, the secretary of appellant went to McDowell's place in Chicago to collect a debt, and was asked to take some machinery in payment. He took this lathe and credited McDowell Co. with its purchase price. On December 21, 1910, the McDowell Co. notified appellee of such sale. Immediately appellee wrote appellant that the lathe was its property; that it was with McDowell Co. on consignment and that settlement therefor must be made direct to appellee, and after some further correspondence, appellee finally wrote appellant that if they did not want to keep the lathe under these terms, it would, on notice, give shipping instructions. On February 1, 1911, appellee credited appellant with $141.25, received from McDowell Co. to apply on the purchase price of the lathe and on refusal of appellant to return the lathe or pay the remainder of the purchase price, appellee commenced this suit in *assumpsit* in the County Court of Winnebago county to recover the value or price of the lathe. The declaration contained a special count alleging an indebtedness for the lathe and the common counts. Attached to the declaration was a copy of the account sued on. A plea of *non-assumpsit* and two special pleas were

interposed to the declaration. The special pleas alleged that appellee was a foreign corporation organized for profit under the laws of the state of Ohio and had not complied with the statute of this state governing foreign corporations doing business within the state and that appellee did not come within any of the exceptions set forth in the statute and did not have a license to do business within this state pursuant to the statute and therefore could not maintain its action. There was a joinder of issue on the plea of *non-assumpsit* and a replication filed to the special pleas, alleging that the lathe was sold in the state of Ohio and that appellee was not doing business in the state of Illinois within the meaning of the statute governing foreign corporations, concluding to the country. A similiter was added and the court heard the evidence without a jury and rendered a judgment in favor of appellee for $423.75, the amount then due on the lathe, and this appeal is prosecuted to review such judgment.

Appellant contends that, granting appellee to be the owner of the lathe, the suit could not be maintained in assumpsit, but even if so maintainable, its indebtedness against McDowell Co. is a proper subject of set-off, and that the suit is not maintainable for the further reason that the lathe was sold in violation of the statute regulating foreign corporations doing business in this state. Appellant's right of set-off was not raised by plea or notice under the general issue as required by section 47 of the practice act and therefore is not presented for consideration here.

By the arrangement disclosed in this record, appellee did not part with its title to the lathe when it was shipped to McDowell Co. and was not estopped from asserting its ownership when notified that it had been disposed of in violation of the terms of its consignment, unless it had done something to lead appellant to believe it was obtaining a good title to the same when it purchased it. There is no evidence to show

that appellee so treated the lathe, but on the contrary, the evidence does show that appellee, as soon as notified, immediately repudiated the sale. Appellant's representative testified that he knew the machine was made by appellee, did not ask to see an invoice from appellee, did not make any attempt to ascertain whether McDowell Co. owned the machine and that all McDowell said to him was that he could ship the tools. He paid no money for the machine, signed no order and received no invoice. Even if McDowell Co. had represented to appellant that they owned the machine, it could not prejudice appellee's rights. It is a cardinal principle of the law of personal property that its owner cannot be divested of it without his consent. Fawcett, Isham & Co. v. Osborn, Adams & Co., 32 Ill. 411; Burton v. Curyea, 40 Ill. 320; Klein v. Seibold, 89 Ill. 540; Berry v. W. D. Allen & Co., 59 Ill. App. 149. In this case McDowell Co. was but the factor of appellee so far as the lathe in question was concerned. They could not transfer the title to appellant, even though appellant had no notice of appellee's relation to it. A power to sell, such as is possessed by a factor or broker appointed for that purpose, can only be executed by way of sale and does not justify a disposition of the property in any other way. Gray v. Agnew, 95 Ill. 315.

It was stipulated on the trial that the lathe had been sold and converted into money by appellant before the suit was commenced. Where a party has converted the goods of another into money or money's worth the owner may waive the tort and sue in *assumpsit*. Toledo, W. & W. R. Co. v. Chew, 67 Ill. 378; Landis v. Wolfe, 106 Ill. App. 533; City of Elgin v. Joslyn, 136 Ill. 525. The retention by appellant of the money received from the sale of the lathe gave appellee the right to sue appellant in *assumpsit* upon the implied contract on the ground that appellee owned the lathe and that it had been sold to appellant, but that appellant, having disposed of it and received the avails,

was liable for the value of the machine, unless the evidence justified appellant's contention that the lathe was sold in violation of the statute.

Sections 67b, and 67c, Chapter 32, Hurd's R. S. 1911, provide: "Before any foreign corporation for profit shall be permitted or allowed to transact any business, or exercise any of its corporate powers in the State of Illinois," such corporation shall procure a certificate from the Secretary of State, authorizing it to transact business within this state. Section 67g, of the same act provides certain penalties for its violation, and provides that in addition to such penalties, if any such corporation shall fail to comply with the statute, no suit may be maintained by it, either at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort, in any court in this state. Appellee did not have the license required by the statute. The question then arises, did appellee transact business in the state of Illinois within the meaning of the statute? We think all courts agree that these statutes must receive such construction and enforcement as will not interfere with interstate commerce, and almost all agree that the sale and delivery of goods or manufactured commodities, not properly subject to police surveillance, by a citizen or corporation of one state to a citizen or corporation of another state is interstate commerce. In Havens & Geddes Co. v. Diamond, 93 Ill. App. 557, we held that where a foreign corporation manufactures goods in a foreign state, and sends drummers into this state who solicit and take orders in this state, and such orders are accepted in a foreign state and the goods there shipped consigned to the purchaser, this is not doing business in this state within the meaning of our statute regulating foreign corporations. In John Spry Lumber Co. v. Chappell, 184 Ill. 539, it was said: "The John Pritzlaff Hardware Company, a corporation organized in the State of Wisconsin, had sold goods to the firm of Gregg Bros. & Chappell, in consequence of

which they became indebted to it, and the amount of its judgment resulted from such sale and delivery of the goods. It had the right to invoke the aid of the courts in the collection of the debt due it," etc. On the other hand, in Union Cloak & Suit Co. v. Carpenter, 102 Ill. App. 339, it was held that a foreign corporation who sent its goods to its agent in this state, to be sold here at retail, was doing business in this state within the meaning of the statute. This case turned upon the fact that the goods were sent into this state by the owner, and here displayed and sold. The only difference in the conduct of business involved in the case at bar and the conduct of business in the Havens case, *supra*, is, if the buyer did not or could not wait for the lathe, one of the sample lathes on display might, on the approval of appellee, be shipped from Chicago. Since the proof shows that the lathe in question was the only one sold by McDowell Co. directly to a customer, which order was repudiated by appellee as soon as brought to its notice, we can see no difference in appellee's method of doing business than in the case of a traveling salesman or drummer taking orders as in the Haven case, *supra*, and the suit can be distinguished from the case of Union Cloak & Suit Co. v. Carpenter, *supra*, as in that case the goods were sent into the state to be exhibited and sold at retail and it is not in conflict with the recent case of International Text-Book Co. v. Mueller, 149 Ill. App. 509, as in that case one of the grounds for the holding that appellant therein was transacting business in the state in violation of the statute was that it maintained a distributing office in this state, where it shipped text-books in car load lots, which text-books were thereafter sent in single volumes by mail or express to its students residing within certain territory which constituted a part of the consideration for the correspondence course for which the students paid a certain sum of money.

We are of opinion that the transaction between ap-

pellant and appellee, disclosed by the record in this case, was not "transacting business within this state" on the part of appellee within the true meaning of the statute upon which appellee's special pleas are based, and the judgment is affirmed.

*Affirmed.*