MILAN MILLING, ETC., CO. *v.* GORTEN.

(*Jackson.*    October 8, 1894.)

FOREIGN CORPORATIONS. *Their acts of interstate commerce valid and en-forcible.*

Where a foreign manufacturing corporation that has not complied with our statutes by registering its charter, contracts with a resident to furnish, deliver, and put in position for him within this State certain mill machinery, and accepts for the work and materials furnished the purchaser's notes for deferred payments, secured by mortgage upon real estate situated within this State, the transaction constitutes inter-state commerce, which is not subject to regulation by State laws, and the notes and mortgage are valid and enforcible.

Acts construed: Acts 1891, Ch. 122; Acts 1877, Ch. 31.

Case cited and approved: 113 U. S., 727.

Cited and distinguished: Cary-Lombard Lumber Co. *v.* Thomas, 92 Tenn., 587.

FROM GIBSON.

Appeal from Chancery Court of Gibson County. H. J. LIVINGSTON, Ch.

S. F. RANKIN, JO. R. HAWKINS, and ED SMITH for Complainant.

WALKER & BIGGS for Defendant.

McALISTER, J.   The original bill in this cause was filed in the Chancery Court of Gibson County

by the Milan Milling and Manufacturing Company against W. E. Gorten *et al.*, for the purpose of enjoining the collection of four notes, and the foreclosure of a deed of trust made to secure them.

In the year 1892, the Milan Milling and Manufacturing Company entered into a written contract with the Maish & Gorten Manufacturing Company, a foreign corporation, having its office and principal place of business at Warsaw, in the State of Indiana, whereby the latter company stipulated to manufacture, deliver, and put in position for the former company, at Milan, in the State of Tennessee, certain milling machinery. The price agreed to be paid by the Milan Milling and Manufacturing Company was $5,334—viz., $1,897 in cash, upon the arrival of the machinery at the mill, $486 in sixty days, $750 in six months, $750 in twelve months, and $750 in eighteen months from April 15, 1892, all evidenced by promissory notes.

The Milan Milling and Manufacturing Company further agreed to execute a first mortgage upon the milling property and lot to secure said deferred payments. In compliance with their agreement, the Maish & Gorten Manufacturing Company furnished said machinery, and adjusted it in the mill building at Milan, and the same was accepted by the Milan Milling and Manufacturing Company. The cash payment was made, and notes executed for the deferred payments, which were secured by a first mortgage on the milling property. Shortly after the execution of the notes, they were in--

dorsed by the Maish & Gorten Manufacturing Company to the State Bank of Warsaw, Indiana. Default having been made by the Milan Milling and Manufacturing Company in the payment of the first note, the trustee advertised the property to be sold in accordance with the provisions of the deed of trust. Thereupon, the Milan Milling and Manufacturing Company filed their original bill to enjoin the sale, alleging that the Maish & Gorten Manufacturing Company had breached their contract in the manufacture and delivery of said machinery, in consequence whereof, the Milan Milling and Manufacturing Company had been greatly damaged, and, in accordance with the prayer of the bill, an injunction issued, restraining the trustee from selling the property.

The State Bank of Warsaw, in its answer, denied all the material allegations of the bill, claiming to be an innocent purchaser of said notes for value before maturity, in due course of trade, and by cross-bill prayed a foreclosure of the deed of trust.

It appeared in proof that the Maish & Gorten Manufacturing Company and the State Bank of Warsaw are both foreign corporations, chartered under the laws of the State of Indiana, and that neither company has ever complied with the laws of the State of Tennessee requiring foreign corporations, before doing business in this State, to register their charters.

Upon final hearing, the Chancellor was of opin-

ion, and so decreed, that both the State Bank of Warsaw and the Maish & Gorten Manufacturing Company, being foreign corporations, and not having complied with the laws of Tennessee, the said contract to furnish machinery was non-enforcible, and that the deed of trust having been executed in violation of said statute, complainant in the cross-bill, the said State Bank of Warsaw, was not entitled to have same foreclosed.

The Chancellor, however, was of opinion that the State Bank of Warsaw was a *bona fide* purchaser for value, before maturity, of the notes in question, and, as such, was entitled to a decree against the Milan Milling and Manufacturing Company on the two notes which had matured at the date of filing the cross-bill. The Chancellor further decreed that the complainants in the original bill, to wit, the Milan Milling and Manufacturing Company, acquired no such jurisdiction over the Maish & Gorten Manufacturing Company as would entitle them to a decree against the latter for a breach of the contract, but the Court decreed that the injunction be made perpetual so far as it sought to enjoin the sale of said milling property by the trustee.

The Milan Milling and Manufacturing Company appealed from so much of said decree as adjudged it liable upon said notes. The State Bank of Warsaw appealed from so much of said decree as refused a foreclosure of the deed of trust on the milling property for the satisfaction of said notes.

38—9 p

The assignment most earnestly pressed and elaborately argued by counsel for the State Bank of Warsaw is, that the Chancellor erred in finding that the Maish & Gorten Manufacturing Company was doing business as a foreign corporation in violation of the statutes of this State. It is insisted that the said Maish & Gorten Manufacturing Company do not come within the purview of these laws, for the reason that this company has no office or agency in the State, and is not engaged in carrying on business in the State of Tennessee. It is insisted on behalf of appellants that this corporation is engaged in interstate commerce—that is, manufacturing mills and milling machinery in the State of Indiana, and in selling the same by their agents or upon orders in the different States of the Union; that all its transactions with the Milan Milling and Manufacturing Company were acts of interstate commerce, the regulation of which belongs exclusively to the domain of the Congress of the United States, and that the construction of the statute contended for would render it void, because it would thereby involve an interference with interstate commerce.

In the case of the *Cooper Manufacturing Co.* v. *Ferguson*, 113 U. S., 727, it appeared that the Constitution of Colorado provided that no foreign corporation should do any business within the State without having one or more known places of business, and an authorized agent or agents in the same, upon whom process might be served. The

Legislature of the State enacted that foreign cor-
porations, before being authorized to do business
in the State, should file a certificate with the Sec-
retary of State and the Recorder of the county
in which the principal business was carried on,
designating the principal place of business, and the
agent there, on whom process might be served.
These provisions of the Constitution and statute
law of the State of Colorado being in force, the
Cooper Manufacturing Company, a corporation or-
ganized and existing under the laws of the State
of Ohio, and having its principal place of business
at Mount Vernon, Ohio, sent an agent into the
State of Colorado, and entered into a contract, in
writing, with the defendants, who were citizens of
Colorado, by which it was agreed that the Ohio
corporation should sell and deliver to the defend-
ants, citizens of Colorado, a steam-engine and
other machinery. Default having been made by
defendants in payment, the plaintiff brought suit
to recover of the defendants damages for their
breach of the contract. It was held by the State
Court of Colorado that plaintiff could not recover,
because it appeared that said foreign corporation
had not complied with the law of the State in
respect to filing a certificate with Secretary of
State and the Recorder of the county in which
the principal business was carried on.

Upon writ of error to the United States Supreme
Court, it was held that the facts of the case did not
constitute a carrying on of business in Colorado,

and was not forbidden by its constitution and law.
Mr. Justice Matthews, in delivering a concurring
opinion, stated, we think, the correct basis of the
judgment of the Court. He said, viz.: "Whatever
power may be conceded to a State to prescribe
conditions on which foreign corporations may trans-
act business within its limits, it cannot be admitted
to extend so far as to prohibit or regulate com-
merce among the States; for that would be to
invade the jurisdiction which, by the terms of the
Constitution of the United States, is conferred ex-
clusively upon Congress. In the present case," he
continued, "the construction claimed for the con-
stitution of Colorado, and the statute of that State,
cannot be extended to prevent the plaintiff in error,
a corporation of another State, from transacting any
business in Colorado which, of itself, is commerce.
The transaction in question was clearly of that
character. It was the making of a contract in
Colorado to manufacture certain machinery in Ohio,
to be there delivered for transportation to the pur-
chasers in Colorado. That was commerce, and to
prohibit it, except on conditions, is to regulate
commerce between Colorado and Ohio, which is
within the exclusive province of Congress." The
Judge continues: "*It is quite competent, no doubt, for
Colorado to prohibit a foreign corporation from ac-
quiring a domicile in that State, and to prohibit it
from carrying on within that State its business of
manufacturing machinery.* But it cannot prohibit it
from selling in Colorado by contracts made there,

its machinery manufactured elsewhere, for that would be to regulate commerce among the States."

It has been suggested that the case of *Cary Lombard Lumber Company* v. *Thomas*, 8 Pickle, is in conflict with this view. Such supposition is erroneous, and is based upon an entire misconception of that case. The Court, in the Cary Lombard case, was not dealing with interstate commerce. No such question was presented by the record in that case. On the contrary, it distinctly appeared in evidence that the Cary Lombard Lumber Company had an office and lumber yards in the city of Memphis, and was actually engaged in carrying on business in this State. It had acquired a *situs* and domicile in the State, and was, of course, subject to the regulations of. our statute.

In the case at bar, the Maish & Gorten Manufacturing Company, a foreign corporation, had simply contracted with citizens of Tennessee to furnish certain milling machinery, and to adjust it in position in the mill. This company was in no sense engaged in carrying on its business in this state, but was engaged in an act of interstate commerce. In this respect the decree of the Chancellor is reversed, and a decree will be entered in favor of the State Bank of Warsaw on all of the notes, which in the meantime have matured, and for a foreclosure òf the deed of trust made to secure them.