NEW YORK COTTON EXCH. v. HUNT.

SAME v. DUNCAN et al.

(Circuit Court, W. D. Tennessee, E. D. March 14, 1906.)

Nos. 601, 602.

1. CORPORATIONS—FOREIGN CORPORATIONS—RIGHT TO SUE—COMPLIANCE WITH STATE LAWS.

Where a foreign corporation had done no business in Tennessee and owned no property in that state, the fact that it had failed to comply with the laws of Tennessee, regulating foreign corporations, did not prevent it from maintaining a suit, in the federal courts sitting in Tennessee, to enjoin a citizen of that state from wrongfully obtaining complainant's stock quotations, in violation of a New York contract made with certain telegraph companies.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 2544, 2563-2567.]

2. ABATEMENT—ANOTHER ACTION PENDING.

The pendency of a suit in the state court is no bar to a suit on the same subject-matter in a federal court in the same state.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Abatement and Revival, § 87.

Pendency of action in state or federal court as ground for abatement of action in the other, see note to Bunker Hill & Sullivan Mining & Concentrating Co. v. Shoshone Mining Co., 47 C. C. A. 205.]

3. SAME.

The pendency of a suit in the state court, where the parties to the suit are not the same, and the relief sought is not the same, is no bar to a suit in the federal court.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Abatement and Revival, §§ 39-85.]

4. COURTS—FEDERAL COURTS—RESTRAINING ACTION IN STATE COURTS.

Where plaintiffs, in a case in the state court, sought to restrain a telegraph company from removing one of its tickers from its office, and to enjoin the telegraph company from discontinuing its continuous cotton quotation service, a suit by a cotton exchange to restrain the defendant, who is one of the complainants in the case in the state court, from receiving and using its continuous cotton quotations, is not a suit to enjoin the action in the state court, prohibited by Rev. St. U. S. § 720 [U. S. Comp. St. 1901, p. 581], providing that an injunction shall not be granted by a federal court to stay proceedings in any court of a state, except in bankruptcy matters.

[Ed. Note.—Federal courts enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

5. EXCHANGES—CONTRACTS—CONSTRUCTION—ESTOPPEL.

A contract between a cotton exchange and a telegraph company, for the purpose of restricting the dissemination of quotations to those persons only who were permitted to receive them by the exchange, provided that the telegraph company should not be required to remove any of

its tickers or wires, or to discontinue service furnished by other means which are under restraint by injunction of the courts during the pendency of such injunction. *Held*, that such provision merely bound the exchange not to seek to hold the telegraph company liable or to cancel its contract with it, where the telegraph company continued to furnish cotton quotations under such circumstances, and did not estop the exchange to object to the furnishing of continuous quotations to, or the use of such quotations by, the complainant, in an injunction suit against the telegraph companies during the pendency of an injunction.

6. SAME—QUOTATIONS—CONTRACT TO FURNISH—TERMINATION.

Where a contract with a telegraph company for the furnishing of continuous cotton quotations was a monthly contract, one of the conditions of which authorized the telegraph company to discontinue the service at any time without notice, when in its judgment any breach of the condition should have been made by the defendant, the telegraph company had power to discontinue the service at the end of any month, on giving reasonable notice.

[Ed. Note.—Quotation of prices and transactions on exchanges, see note to Sullivan v. Postal Tel. Cable Co., 61 C. C. A. 2.]

7. SAME—COLLECTION OF QUOTATIONS—TERMINATION OF PRIVILEGE.

Where, at the time a contract with a telegraph company for the furnishing of continuous cotton quotations was made, the telegraph company was exercising a privilege of collecting and distributing such quotations by the grace of the cotton exchange, the fact that the telegraph company made contracts to furnish such quotations, without containing an express limit of duration, did not deprive the exchange of the right to terminate the telegraph company's privilege to distribute the quotations to whomsoever it pleased.

The bill in this case was filed January 25, 1906, by the New York Cotton Exchange, against Clarence P. Hunt. On January 27, 1906, a notice was given to the defendant that the bill had been filed, and that the complainant desired to make application for the issuance of a preliminary injunction as prayed for in the bill, and an order was issued, directing that said defendant appear at the chambers of this court, in the city of Memphis, Tenn., at 9 o'clock, February 6, 1906, and show cause, if any he had, why the preliminary injunction should not be granted as prayed for. The defendant appeared accordingly, and the hearing of the application for preliminary injunction was entered upon. And, without completing the hearing, an adjournment was taken until March 5th, when the defendant again appeared in response to said order, and filed his answer to the bill of complaint, wherein he sets up various and sundry reasons why, in his judgment, the application for the preliminary injunction should be refused.

Briefly stated, the bill sets out, as the grounds for its application for an injunction, that it is a private corporation, organized under a special charter by the state of New York on the 8th day of April, 1871, which was amended by the Legislature on the 8th day of May, 1880, and that it is a citizen of the state of New York, and has its principal office and place of business in that state, and that the defendant Clarence P. Hunt is a citizen of the state of Tennessee, and is a resident of the Western district of said state, doing business in the city of Memphis. The bill further alleges that the complainant has provided, within its Exchange Building in the city of New York, for the exclusive use of its own members, an Exchange Hall, where members meet to buy and sell for themselves, or as brokers for their customers, for present and future delivery, cotton. That the knowledge of the prices thus made in said transactions has become a species of property of such large value to complainant that telegraph companies are willing to pay large sums of money for the privilege of receiving instantaneously such quotations, and distributing the same to their customers, and that many persons throughout the United States who are engaged in the cotton and commission business are willing to, and do, pay said telegraph companies therefor. And that complainants realize from the distribution of said quotations through said tele-

graph companies large sums of money annually. That such quotations are such a peculiar kind of property that their value depends upon complainant's power to confide the transmission and distribution thereof to such telegraph companies and other distributing agencies as will contract therefor with complainants, and that if individuals or corporations are permitted to improperly acquire said quotations surreptitiously, or by theft, or without the approval of complainant, such person or corporation can promptly give the same to numerous other persons, and that the telegraph companies contracting with complainant for said quotations will be put to a disadvantage in competition with such persons so obtaining said quotations without paying complainant therefor, and the telegraph companies would thereby be deterred from continuing to pay the complainant the prices provided in said contract between the complainant and the telegraph companies.

The bill alleges that the expense of collecting these quotations is more than $4,500 annually. It is alleged that prior to July 14, 1903, certain telegraph companies were permitted to gather such quotations through their own employés from the exchange floor of complainant, and to distribute the same to their customers without any effective restrictions upon the persons entitled thereto. And for reasons set out in the bill, which it is not necessary here to state, complainant alleges that it found it necessary to, and it did, on the 14th day of July, 1903, terminate the right or license of telegraph companies to collect complainant's said quotations, and that complainant adopted certain reasonable regulations, calculated to prevent the promiscuous sale and distribution of said quotations, and, to this end, entered into a written contract with the Western Union Telegraph Company, and with the Postal Telegraph Company. That on the 14th day of July, 1903, the Western Union Telegraph Company was required by complainant to, and it did, in the name of the Gold & Stock Telegraph Company, which is the name of the company through which the Western Union Telegraph Company transacts its business relating to market news and quotations, execute with the complainant an agreement in writing, a copy of which is set out in the bill. The Postal Telegraph Company, it may be stated, entered into the same written agreement with complainants. That part of the contract or agreement, which need be stated, is, briefly, as follows: The cotton exchange agrees, at its own cost and expense, to collect, furnish, and transmit to the telegraph company, full and continuous quotations of the current transactions in cotton which originate and are consummated on the floor of the exchange during the hours of trading prescribed by its rules, and also the changes which may occur in the same from time to time. For the privilege of receiving and serving the said quotations, the Western Union Telegraph Company, known in this contract as the Gold & Stock Telegraph Company, agrees to pay to the cotton exchange the sum of $13,584 per annum, in equal monthly installments of $1,132 each. And for like privilege and service, the Postal Telegraph Company agrees to pay to the cotton exchange $3,396 in cash. This agreement provides that the telegraph company may serve said quotations to members of the cotton exchange at their offices and branch offices, and shall charge said members of the exchange for the use of "tickers" in their offices in New York City not exceeding $20 per month for each "ticker." It is further provided that the said telegraph companies shall have the right to serve continuous quotations to all persons, firms, corporations, and organizations in New York City and elsewhere, wherever the telegraph company may desire to serve them, but not to persons, firms, or corporations which may be directly or indirectly engaged in the formation or maintenance of bucket shops, or other places where such continuous quotations are used as a basis for bets or illegal contracts based on fluctuation in the price of cotton dealt in on said exchange, together with the right to collect its tolls and charges therefor; all tolls and charges so collected to belong to and be retained by the telegraph companies. The said contract and agreement contains the further limitation on the right of the telegraph company to distribute these quotations, and, since it is this clause in the contract which gives rise to the present litigation, I quote it verbatim: "But the telegraph company shall not, under any circumstances, directly or indirectly, furnish said continuous quotations to

144 F.—33

any person, firm, corporation, or organization, whether members of the exchange or not, until such person, firm, corporation, or organization shall have submitted an application in writing to the said exchange, in such form as the exchange shall provide, and until said exchange has approved the said application." A copy of the written application to be made under the foregoing paragraph is set out in the bill, but it is not necessary to repeat it here.

Complainants charge that all persons, directly after the making of said contracts, who were receiving said quotations from either of said telegraph companies prior to July 14, 1903, have executed and delivered an application substantially in the form set out in the bill, which application, before the delivery of any quotations thereunder, was approved and accepted by complainant, except in a few instances; but the complainant charges that the defendant has never delivered to either of said telegraph companies, or to complainant, any application as required under the contract, nor has the complainant consented that the defendant should receive its quotations.

It is charged that on July 14, 1903, the defendant Clarence P. Hunt was receiving from the Western Union Telegraph Company said continuous quotations of complainant, and that the Western Union Telegraph Company notified the defendant of the making of said contract between the complainant and the telegraph company, and that thereunder the telegraph company would be required to, and would, cease furnishing to defendant said quotations, unless and until said Hunt should apply for said quotations, and such application should have been approved by complainant, as in said contract provided. And that thereupon defendant declined and refused to make such application, but in lieu thereof, and on July 31, 1903, said Hunt, with others, filed in the chancery court of Shelby county, Tenn., a petition against the Western Union Telegraph Company to enjoin it from removing its tickers from defendant's office, or ceasing to furnish said petitioners complainant's said quotations.

An ex parte injunction was issued against said telegraph company, and thereafter it filed its answer to said petition, setting up the contract with complainant, and denying the right of said petitioners to the relief in said petition prayed, and a judgment was entered in the state court for defendants on the petition and answer thereto. An appeal was taken from said judgment to the Supreme Court of Tennessee, and on the 15th of June, 1905, said Supreme Court reversed said decree without deciding the merits, and for the reason that said chancery court should not have disposed of said cause upon the bill and answer, but should have awaited the taking of evidence therein. It is alleged that said case is now pending and undisposed of in said chancery court, and the injunction is still in force, and the bill alleges that by reason of said injunction, and under its orders, the Western Union Telegraph Company has been, and now is, furnishing to the defendant Clarence P. Hunt, and said Hunt is now receiving, the quotations of complainant. It is alleged that the unauthorized receipt and use of these quotations by the defendant is calculated to, and in time will, if not entirely stopped, seriously impair the value to complainant of its quotations: and that, if even one person within the jurisdiction of this court be allowed to secure the quotations without restriction as to the use thereof which complainant imposes, such person can furnish them to all the bucket shops and other persons within the United States desiring them, and thus defeat the efforts of complainant to limit the use of these quotations, and materially impair its right to derive revenue from the distribution thereof. It is alleged that complainant has no adequate remedy at law to protect its right of property in said quotations against the efforts of defendant to destroy the same; and that the only adequate jurisdiction for the protection of its property in said quotations is in a court of chancery, and the only adequate remedy is a writ of injunction restraining the defendant from using or distributing said quotations, or receiving the same from either of said telegraph companies until he shall have made application therefor as provided in said contract, and until complainant shall have approved said application.

The complainant prays that a temporary injunction may immediately

issue, and, upon the final hearing, be made perpetual, restraining defendant, either acting in his own behalf, or as a member of any firm, or as an agent or officer of any other person, firm, or corporation, and also each and every of the agents, employés, and servants of said defendant from receiving, issuing, selling, or distributing, directly or indirectly, the quotations of complainant, or any of them, and from having, maintaining, or permitting any telegraph or other wire running in or through his office, over which said quotations are passing, and from aiding, abetting, or assisting, directly or indirectly, any person, firm, or corporation in receiving, using, selling, or distributing said quotations, until he, or the person, firm, or corporation for which he shall be acting shall have first lawfully acquired the right to receive said quotations, either by contract or purchase from the complainant, or with complainant's consent and approval, from one of the telegraph companies authorized by complainant to distribute said quotations, and for general relief.

The defendant answers the bill of complaint, and sets up the causes which he insists are sufficient to warrant the court in refusing the prayer of complainant's bill, and without stating them at length, they are as follows:

(1) That the complainant is a foreign corporation, and that under the laws of Tennessee it cannot own property, or do business in the state, and has no right to maintain this suit; it having not complied with the laws of Tennessee regulating the carrying on of business in this state by a foreign corporation.

(2) Defendant says this injunction should not be granted because he and other persons similarly engaged on July 31, 1903, filed a bill in the chancery court of Shelby county, Tenn., against the Western Union Telegraph Company, enjoining said telegraph company from removing from the place of business of the defendant, just as long as he paid the price therefor, the ticker then in his place of business, and commanding and requiring the Western Union Telegraph Company to afford this defendant, through the means of the ticker in his place of business, quotations, just as long as said telegraph company furnishes said quotations to other persons in the city of Memphis, who are engaged in the same business as the defendant, whilst he complied with its reasonable regulations, and paid for said service; and that this injunction is still in force, and the cause pending in the state court undisposed of. And defendant says that said suit in the chancery court embraces and comprehends the same subject-matter as the present suit; that it is between the same parties, plaintiff and defendant, in this present suit; that the same questions of fact and law are involved, and to be decided as in this suit; and that the decree to be pronounced will adjudicate and dispose of the same matters of controversy that are sought to be adjudicated and disposed of in this suit, and relies upon the pendency of said suit in the chancery court of Shelby county in bar of further prosecution of this suit. And defendant insists that the complainant here, under a clause in the contract of July 14, 1903, should appear and defend in the case in the state court.

(3) This injunction should not be issued because it is provided in the contract of July 14, 1903, between the cotton exchange and the telegraph companies that "The telegraph company, however, shall not be required to remove any of its tickers or wires, or discontinue service furnished by any other means which are in restraint by injunction of the courts, during the pendency of such injunction."

(4) Defendant denies that complainant has any property in these quotations upon their arrival in Tennessee, or upon their delivery here.

(5) That these quotations made in complainant's cotton exchange are being used, and are used, in conducting the business of gambling or betting upon the fluctuations in the price of cotton, and that this constitutes the principal part of the business of the New York Cotton Exchange, and that therefore complainant's reputation or good name is not affected or injured by the defendant's conduct, even if he were using them for bucket shop purposes.

(6) He admits the making of the contract of July 14, 1903, between the

complainant and the Western Union Telegraph Company, or the Gold & Stock Telegraph Company, but denies that the rights he possessed when the said contract was entered into were, or could be, affected by such contract; and sets up that in March, 1899, he made application to the Western Union Telegraph Company, under its designation of Gold & Stock Telegraph Company, for its cotton quotations by ticker, and such application was accepted by the Telegraph Company by an agreement of this defendant to pay therefor $25 per month for said service. This contract is made a part of the answer as Exhibit A, but need not be quoted here. And defendant insists that this last-named contract, between him and the telegraph company, is in force and was in no way affected by the contract of July 14, 1903, between the cotton exchange and the telegraph company, and insists that to revoke or cancel this contract, Exhibit A, and take from defendant the benefit thereof, of the use of the cotton quotations by and through the ticker, as agreed therein, would in effect destroy his business as a business of profit and value, and would cause him irreparable injury and damage.

(7) He insists that the contract between the telegraph company and the cotton exchange is illegal and void, in attempting and undertaking to create and preserve a monopoly in complainant in the sale and use by it of its quotations after they have reached the state of Tennessee, and in undertaking to confine the distribution of such quotations to such persons as the complainant elects, and, in attempting to do so, the complainant exceeds the powers granted it by its charter.

(8) He admits that he has not made any application to the complainant, or to the Western Union Telegraph Company, or to the Gold & Stock Telegraph Company, as required by said contract between the cotton exchange and the telegraph companies, because the rules and regulations that complainant has attempted to impose, as stated in the bill, are not reasonable, but are unjust, oppressive, and illegal.

(9) Defendant insists that the injunction should not issue in this case, restraining the defendant from receiving, or using, these quotations, because other parties in the same business as defendant are receiving and using said quotations, and to refuse defendant such quotations on the same terms by which other parties receive them is wrongful and in violation of law.

These, as I understand, are substantially the causes shown by the defendant why the preliminary injunction should not issue in this case.

Henry Craft, Henry S. Robbins and Henry W. Taft, for plaintiff.

Turley & Turley, Carroll, McKellar & Bullington, R. N. Heath, and Randolph & Randolph, for defendant.

McCALL, District Judge (after stating the facts). Unless there is some question raised here which distinguishes this case from the case of the Board of Trade of Chicago v. Christie Grain & Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031, it seems to me that this preliminary injunction must issue. In order to determine this question, I shall notice the causes assigned in defendant's answer why the writ should not issue, which were not presented or considered in the Christie Case, somewhat in the order in which they are set out above.

1. Do the laws of Tennessee, regulating the conditions under which a foreign corporation shall transact business, or own property, in this state apply in this case? The complainant is a foreign corporation and has not registered its charter with the Secretary of State or in any county in Tennessee. I am unable to find anything in the bill or answer, or exhibits thereto, that indicates that it owns property, or that it is, or has been, doing business in Tennessee within the

meaning of the statute regulating foreign corporations in this state. Norton v. Union Bank & Trust Co. (Tenn. Ch. App.) 46 S. W 544; Milan Milling & Mfg. Co. v. Gorten, 93 Tenn. 590, 27 S. W. 971, 26 L. R. A. 135; Eastern Bldg. & Loan Ass'n v. Bedford (C. C.) 88 Fed. 7. All the complainant seeks to accomplish is to have this court protect it in its right to make and enjoy the fruits of a contract entered into in New York between it and certain telegraph companies, and to enjoin the defendant from destroying that right, partially or wholly, by wrongfully obtaining the use and benefit of complainant's property without its consent, and in violation of a New York contract made with the telegraph companies. If a citizen of Tennessee should go to New York and wrongfully get possession of the property of a New York corporation, and bring it to Tennessee, and proceed to use and enjoy the benefit of it, could it be seriously insisted that said corporation would be repelled from the courts in this state, if it should institute a suit here to recover the property or to enjoin the party from the use thereof, upon the ground that it was a foreign corporation, and had not registered its charter as provided by the laws of Tennessee? I think not. Neither would it be repelled for that cause, if it should seek to enforce a New York contract in a Tennessee court. I do not think that the Tennessee statutes relating to foreign corporations apply in this case.

2. It is insisted with much earnestness and plausibility that the suit pending in the state court, wherein the defendant here and others are complainants against the Western Union Telegraph Company, is a bar to this suit, and this court cannot properly issue the writ of injunction prayed for herein, under section 720 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 581.] Section 720 is as follows:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

In discussing this section, in considering an application for an injunction, Judge Taft said:

"It is settled that the pendency of a suit in a state court is no bar to a suit upon the same subject-matter in this court." Bank of Kentucky v. Stone (C.C.) 88 Fed. 398, and cases there cited.

Moreover, the parties to this suit are not the same as the parties to the suit in the state court referred to. Nor is the relief sought the same. There the defendant in this case, and others, seek to restrain the Western Union Telegraph Company (not a party to this suit) from removing one of its tickers from defendant's office, and to enjoin the telegraph company from discontinuing its continuous cotton quotation service. Here the New York Cotton Exchange seeks to restrain the defendant, who is one of the complainants in the case in the state court, from receiving and using its continuous cotton quotations.

Now, it is perfectly clear to my mind that the granting of an injunction in this case will in no way interfere with the proceedings

in the state court, and that suit can be prosecuted to a final judgment, just as if this case had never been brought and did not exist. If the prayer for an injunction is granted in this case, we may say with Judge Taft in Bank of Kentucky v. Stone, supra: We do not enjoin any suit at all by our order; all we do enjoin is the defendant from receiving and using complainant's continuous cotton quotations, as prayed for in the bill. That does not require the defendant to disobey the order of any other court, or restrain his prosecution of a suit therein. Nor is the right of complainant to a restraining order, if it is otherwise entitled to it, affected by the fact that in the contract made with the telegraph company it is provided that: "In cases brought against the telegraph company, the exchange may defend by its own counsel, and at its own expense, in the name of the telegraph company." It seems to me that this language means that the cotton exchange may take that course, if it chooses to do so. But it does not follow that, if the exchange does not choose to pursue that course, it thereby forfeits the right to go into a court of its own selection and prosecute its own suit in its own way to a final judgment.

3. Under the third cause assigned why the relief prayed for should not be granted, counsel for defendant points out that, by one clause of the contract between the complainant and the telegraph companies, it is provided that:

"The telegraph company, however, shall not be required to remove any of its tickers or wires, or to discontinue service furnished by any other means, which are under restraint by injunction of the courts during the pendency of such injunction."

I cannot agree with able counsel in his interpretation of this clause. They insist, as I understand, that this language means that the cotton exchange contracted with the telegraph company, in substance, that it would not object to the telegraph company furnishing, nor to such party receiving and using, its continuous cotton quotations until the suits wherein injunctions were procured against removing the tickers, etc., were finally determined, and such injunctions dissolved; and that the telegraph company is authorized to continue the service in such cases, just as long as the injunction proceedings are operative and in force. It seems to me that a more natural interpretation would be that the cotton exchange would not seek to hold the telegraph company liable, or to cancel its contract with it, where the telegraph company permitted the ticker to remain, and continued to furnish the cotton quotations, under the circumstances as stated in the clause of the contract quoted. Evidently, this paragraph was inserted in the contract of July 14, 1903, to protect the telegraph company against liability to the cotton exchange when conditions should arise similar to those now under consideration. The cotton exchange is not seeking in this suit to have the telegraph company remove the ticker from the office of the defendant, or discontinue the service to him; but, on the other hand, the complainant is allowing the telegraph company to work out its own salvation in that behalf in the case pending against it in the chancery court of Shelby county.

Passing for the moment the fourth and fifth contentions of defendant, as stated above, I will proceed to the sixth cause, which is, in substance, that prior to July 14, 1903, the time when the new agreement was entered into between the complainant and the telegraph company, and in March, 1899, the defendant made a contract in writing with said telegraph company, by which said company was to furnish defendant these continuous cotton quotations for $25 per month, and he was receiving these quotations under that contract when the new agreement or contract was made between the complainant and the telegraph company, July 14, 1903. And defendant insists that the contract of July 14, 1903, between the cotton exchange and the telegraph company, in no way affects his rights under the contract of March, 1899, between defendant and the telegraph company. And that the latter is still in force, and should not be canceled by order of the court so long as he complies with the terms thereof. By examination of the contract between defendant and the telegraph company of March, 1899, it appears that it is a monthly contract, and that one of the conditions is that the telegraph company may discontinue the service thereunder at any time without notice, when, in its judgment, any breach of the conditions shall have been made by the defendant. But, if this condition was not imposed, and the contract being by the month, could not the telegraph company discontinue the service at the end of any month, on giving reasonable notice thereof of its intention to do so? If the quotations are property—and it has been so decided by the United States Supreme Court—and if, as defendant insists, they belong to the telegraph company, would it not have the right to say to whom it would sell them, and when it would discontinue to sell them to a given party? But, aside from this, in the Christie Case, supra, market quotations similar to those involved in this case were held to be property, and belonged to the party collecting them, and such party has the right to control them, and, to that end, such party could by contract say who should distribute them, and limit their distribution to such parties as the owner sees proper, and on such reasonable terms as it may impose. This record shows that, at the time this contract between the defendant and the telegraph company was made, the telegraph company was exercising the privilege of distributing these quotations to whomsoever it pleased, by the grace of the cotton exchange. Does it follow, therefore, that the cotton exchange, the owner of the property, is precluded from terminating this free privilege of the telegraph company to distribute the exchange's quotations, when to do so would be greatly to the exchange's interest, because the telegraph company had made contracts such as the one made with the defendant, which is without end of days, if the defendant is correct in his insistence? I think not. If the telegraph company has made such a contract with the defendant as he insists, then the telegraph company, and not the cotton exchange, which was not a party to that contract, should answer to the defendant for any breach thereof on its part. The cotton exchange is in no way affected by the contract between defendant and the telegraph

company, and is not bound thereby. And its existence in no way affects the right of the complainant to limit the distribution of its quotations.

I have given due consideration to the remaining causes assigned why the injunction should not issue, and I am unable to find anything that differentiates this case in any material matter from the case of Board of Trade of Chicago v. Christie Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031.

It is true that the facts in this case differ from that in some details which appear to me to be immaterial, but the principle announced in that case applies with equal force here, and, on the authority of the Christie Case, I am constrained to grant the preliminary injunction, as prayed for, modified as follows: The defendant Clarence P. Hunt will be restrained from either acting in his own behalf, or as a member of any firm, or as an agent or officer of any other person, firm, or corporation, and also each and every of the agents, employés, and servants of said defendant, from receiving, using, selling, or distributing, directly or indirectly, such quotations of complainant as are sent out at intervals of less than 15 minutes, and from aiding, abetting, or assisting, directly or indirectly, any person, firm, or corporation in receiving, using, selling, or distributing said quotations until the further orders of this court. Before the issuance of this writ of injunction, the complainant will enter into a bond in the sum of $5,000, with good and approved security, conditioned as provided by law.

The same order will be entered in the case of New York Cotton Exchange v. Albert D. Duncan and J. Reiser, No. 602, Equity Docket.