Clifford E. SMITH, Plaintiff,

v.

LANCER POOLS CORPORATION, Defendant.

Dale V. HORN, dba Horn Landscaping Service, Plaintiff,

v.

LANCER POOLS CORPORATION, Defendant.

Civ. A. Nos. 4140 and 4141.

United States District Court
E. D. Tennessee, N. D.
Jan. 20, 1961.

Jackson C. Kramer, Franklin J. McVeigh, Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn., for plaintiffs.

J. H. Doughty, Hodges, Doughty & Carson, H. T. Kern, Knoxville, Tenn., Marcus J. Friedman, New York City, for defendant.

ROBERT L. TAYLOR, Chief Judge.

This matter is before the Court on defendant's motion to quash writ of service of summons and to dismiss the complaints in the case of Clifford E. Smith v. Lancer Pools Corporation, Civil Action No. 4140, and Dale V. Horn v. Lancer Pools Corporation, Civil Action No. 4141, now pending in this court.

In support of the motion, defendant states it is a corporation organized under the laws of New York with offices in Mineola, Long Island, New York; that it has never domesticated in the State of Tennessee; that it does not and has never done business in Tennessee; that it has not designated an agent for service of process upon it in Tennessee; that it does not and never has had an office in the State of Tennessee; it does not have any property in the State of Tennessee; that it does not have any officers, agents or employees in the State of Tennessee, and that it has not authorized any agent or employee to conduct any business for it in the State of Tennessee.

The Court has heard the oral testimony of Mr. Benjamin Tessler, president of the defendant, who has testified, in substance, that the defendant is a sales organization organized for the purpose of selling swimming pools in various States of the Union; that he is also president of a corporation that is known as Lancer Industries and which manufactures the pools that are sold by defendant. These pools are made of fiberglass. Defendant corporation was organized under the laws of New York. The manufacturing corporation was organized under the laws of Florida.

Mr. Tessler has testified in substance that the defendant does not do business in Tennessee, does not have an agent in Tennessee, that it does not have an office in Tennessee, and that it does not own real estate or personal property that is located in Tennessee; that it has never solicited a customer in Tennessee, but that it appoints dealers and distributors in Tennessee for subsequent sales of the Lancer pools to the user in Tennessee. He has filed what is described as a franchise agreement between his company and Mr. Smith, dated March 3, 1959, and a like agreement was made with Mr. Horn which appears to have been made in Florida, or signed in Florida, by Mr. Horn and a representative of the defendant.

The procedure followed by the defendant in establishment of the dealership is to require the potential dealer or distributor to bind himself to purchase at least six pools during the year and make a deposit therefor of at least $600.00. The agreement is automatically renewed for another year at the end of the first year period unless sooner cancelled. The agreement designates the dealer or distributor as an independent contractor, and provides, among other things, that the seller warrants that the pools are free from structural defects, et cetera.

Mr. Tessler stated that this company did not send any representatives into Tennessee to procure dealerships or distributorships. The price paid for the pool by the distributor is between four-

teen and fifteen hundred dollars and the distributor sells that pool to the user for from forty-five hundred to forty-nine hundred dollars. The pools are manufactured in three States. When the pool is purchased by the dealer it is shipped from the factory by common carrier truck and the freight thereon is paid by the dealer. If a complaint is made by the dealer, or the ultimate consumer, that the pool is defective, the defendant sends a representative to inspect it and determine whether the defect of which the complaint is made is covered by the guaranty and if it is covered by the guaranty then the defendant bears the expense of repair. If it is a major repair, some local repairman is procured to do the work and paid by the defendant. If the repair is minor, the dealer does the repair work and is also paid or reimbursed for the expense by the defendant.

The affidavits that are in the record show that a representative of the defendant came to Oak Ridge at the instance of Mr. Horn to supervise the installation of a pool. Mr. Tessler states that Mr. Horn paid this representative at the rate of $50.00 per day plus expenses. He further stated that other than to send a representative of the defendant to Tennessee to inspect as a result of a complaint to determine whether the defect complained of came within the defendant's guaranty, that the defendant did not have other contacts in Tennessee.

The defendant furnishes the dealers literature as to the method used in making sales of the pools. Defendant has had eight dealers in Tennessee during the last three years and has sold six pools during that time. It has three dealers in Tennessee at the present time, one of which is located at Cleveland, another at Maryville, and the third at Memphis.

It is noted that a Mr. Popika signed the Horn agreement dated July 23, 1958 under the name of the defendant. Mr. Tessler testified that Mr. Popika is not now on the payroll of the defendant. A Mr. Church is on the defendant's payroll, and a Mr. Probert is on the defendant's payroll. The latter was an installation man who worked for the defendant.

It is fair to assume from the testimony of Mr. Tessler that Mr. Probert supervises the installation of these pools in Tennessee when they are sold by the defendant. If Mr. Probert does not supervise the installation, another representative of the defendant does supervise the installation of the pools. Mr. Tessler states that the defendant has four to seven installation men in their employment. A Mr. Griffin does work similar to that of Mr. Popika.

The company has individual contracts in the form of letters with these men, which have been filed as exhibits in this record. These letters say, in substance, that these men are independent salesmen in the sale of Lancer Lifetime Swimming Pools and accessory equipment, and so forth; that they are independent contractors with the right to sell the defendant's products in the territory specified.

■ The fact that the defendant designated these people as independent contractors does not make them independent contractors. The question as to whether or not they are in reality independent contractors depends upon many factors, and the Court cannot settle this question simply from an examination of the letters or without hearing all of the facts on the subject. The question as to whether the men are or are not independent contractors is a question of fact which the trier of the facts would be required to determine after all the proof is heard.

The question this morning for the determination of the Court is whether the defendant is subject to suit in this court. If it was doing business in Tennessee during the period of time covered by the complaints, then it was and is subject to suit in this court. If it was not doing business in Tennessee during the period of time covered by the complaints, then it is not subject to suit in this court.

To state the matter in another way, the question on this motion which the Court must decide, is whether it has ju-

risdiction to try the case. If it does not have jurisdiction then it cannot try the case.

■■ The question of jurisdiction is a matter which neither the parties nor the Court can waive. The Court cannot confer jurisdiction on itself. This question of doing business is an elusive one. This is especially so in the light of the most recent decisions from the intermediate appellate courts in the federal system and from the Supreme Court of the United States.

There is not a lawyer in this room who has not studied the landmark case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, which held, in substance, that the due process clause of the Fourteenth Amendment limits the power of state courts to binding personal judgments against persons, firms and corporations who are not doing business in the state.

That case has been referred to frequently by the Supreme Court in its most recent decisions dealing with the question.

The subject is fully discussed in the case of International Shoe Company v. State of Washington, 326 U.S. 310, at page 319, 66 S.Ct. 154, at page 159, 90 L.Ed. 95. In that case, the Supreme Court said, in part:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. (Citing cases.) Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make

binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. (Citing two cases including the old case of Pennoyer v. Neff.)

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

This subject is again discussed in McGee v. International Life Insurance Co., 355 U.S. 220, at page 223, 78 S.Ct. 199, at page 200, 2 L.Ed.2d 223, which case was mentioned by counsel this morning in some of their observations. The Court said in that case, in part:

"Since Pennoyer v. Neff, 95 U.S. 714 [24 L.Ed. 565], this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. (Citing cases.) More recently in International Shoe Co. v. [State of] Washington, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95], the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum

contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' Ibid, at 316 [66 S.Ct. at 158].

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

See also the case of Scholnik v. National Airlines, 219 F.2d 115, at page 118. This is a Sixth Circuit case the opinion of which was written by Judge Shackleford Miller.

This Court had occasion to deal with the subject on February 18, 1958 in the case of Radford v. Minnesota Mining & Manufacturing Co., 128 F.Supp. 775.

Now applying the aforementioned principles to the facts of this case, we find that the defendant is selling swimming pools in Tennessee that are manufactured by another corporation of which defendant's president is also president; that it establishes dealerships or distributorships as methods for the sale of these swimming pools in Tennessee; that it sends persons in its employ to Tennessee to install these swimming pools; that if a pool is or becomes defective it sends representatives to Tennessee to examine that defect and, as Mr. Tessler has stated, to determine whether or not the defect is covered by the guaranty.

If it is, the defendant fulfills its guaranty by making the repairs or causing them to be made at its own expense.

We believe that the defendant's business ties in Tennessee are sufficient to show that it is carrying on business in Tennessee to the extent that service may be had upon defendant in Tennessee.

The Court, is therefore, of the opinion that this motion has to be overruled at this time with the right of the defendant to renew it at the trial on the merits, or sooner if proper. The Court at this time cannot think of any basis why it could be renewed sooner than the trial on the merits because the Court would have to hear proof in detail on the merits before it can decide with finality whether defendant is liable for the alleged wrongs set forth in the complaint or is not liable.

Parties will present an order in conformity with the views expressed herein.