Elwood **SHULER**

v.

William **WOOD, d/b/a Central Illinois Tower Maintenance Company, Stainless, Inc., and Stainless Construction Company.**

**Civ. A. No. 4243.**

United States District Court
E. D. Tennessee, N. D.

Oct. 24, 1961.

# 802

Thearon F. Chandler, Joseph W. Rogers, Knoxville, Tenn., for plaintiff.

Ben F. McAuley, Knoxville, Tenn., for defendants.

**ROBERT L. TAYLOR, Chief Judge.**

This matter is before the Court on the motion of the defendants, Stainless, Inc. and Stainless Construction Company, to quash process and to dismiss the action on the ground that these defendants are Pennsylvania corporations and not subject to service of process in Tennessee. There is a motion also by plaintiff for a hearing on the motion to dismiss.

The motion is supported by the affidavit of Ben F. McAuley, counsel for defendants, and discloses the following facts: Defendant, Stainless, Inc., with principal offices at New Wales, Pennsylvania, was a subcontractor of H. K. Ferguson Company, an Ohio corporation, which held a prime contract with the Atomic Energy Commission dated August 12, 1955 to do certain construction work at Oak Ridge, Tennessee. The subcontract was entered into on February 1, 1961 for the fabrication, installation and erection of three steel towers 150 feet high in the Oak Ridge National Laboratory area, Oak Ridge, Tennessee.

The affidavit further declares that Stainless, Inc., fabricated the towers and thereafter sublet to its wholly owned subsidiary, Stainless Construction Company, also a defendant and a Pennsylvania corporation with principal offices at North Wales, Pennsylvania, that portion of the subcontract relating to the *erection* of the towers. Thereafter, on February 17, 1961, Stainless Construction Company purported to sublet to defendant William Wood, d/b/a Central Illinois Tower Maintenance Company of Monticello, Illinois, the erection portion of the subcontract, this work to start February 4, 1961.

Plaintiff, an iron worker, was employed by said Wood to assist in the erection of one of the towers and was injured when the tower collapsed as the result of alleged negligence of Wood while the latter was allegedly acting as the agent of defendants, Stainless, Inc. and/or Stainless Construction Company.

The motion to dismiss raises two questions: (1) Whether the two corporate defendants (or one of them) was "doing business" in Tennessee so as to subject themselves to service upon the Secretary of State under Section 48–923 of T.C. and (2) whether Wood was an agent of either of the corporate defendants.

In reaching an answer to the first question, it should be borne in mind that jurisdiction of the Federal Court to entertain the action is dependent upon the legality of the service upon the Secretary of State pursuant to the Tennessee Statute (Sec. 48–923.) This statute states in part:

> "Any foreign corporation who shall *do business* in Tennessee without designating an agent upon whom process may be served in suits brought against such corporation in the courts of this state as required by law, and who shall make use of the privilege extended by law to foreign corporations to *do business* in this state upon domestication, shall be deemed thereby to constitute the secretary of state * * * as its agent, for the acceptance of * * process in any civil action brought by any person * * * against such undomesticated foreign corporation, arising out of such unauthorized business done in this state * * *." (Emphasis added.)

It is obvious that for such service to be valid the foreign corporation must have been "doing business" in the state. And for an interpretation of the clause "do business", under Erie v. Tompkins, this Court must look first to interpretation of the Tennessee Courts. In

other words, whether this Court has, or doesn't have, jurisdiction would seem to depend upon the observance or nonobservance of the statute, *as construed by the Tennessee courts*. However, there is eminent authority to the contrary, namely, that validity of service may depend upon federal law. Jaftex Corporation v. Randolph Mills, Inc., 2 Cir., 282 F.2d 508 (opinion by Clark). But see to the contrary Trippe Mfg. Co. v. Spencer Gifts, Inc., 7 Cir., 270 F.2d 821 and Abel v. Albina Engine & Machine Works, 10 Cir., 284 F.2d 510.

There are two cases on the general subject by our Court of Appeals, WSAZ, Inc. v. Lyons, 6 Cir., 254 F.2d 242, 246 and Scholnik v. National Airlines, 6 Cir., 219 F.2d 115. Although the first was a removal case and could be distinguished on that ground from one (like this case) where suit originated in the Federal Court, the basic problem of jurisdiction would seem to be the same. Of course, there may not have been any Kentucky decisions construing the statute. The Court made no mention of this fact and proceeded to make its own construction of the Kentucky statute, nor is any mention made of the Ohio statute in the Scholnik case. In other words, our Court of Appeals would seem to be allied with the majority in the Jaftex case that validity of service under the state statute is a matter of federal law.

We, of course, know that the trend is "toward expanding the permissible scope of state jurisdiction over foreign corporations * * *." See Memorandum Opinion of this Court dated January 20, 1961 in Smith v. Lancer Pools Corporation 200 F.Supp. 199. But this Court did not in that case consider whether its determination should rest upon its own or state court interpretation of the "doing business" statute. It does not appear that the Supreme Court of the United States has considered the precise question and conceivably such question would arise only where the state and federal constructions of the substituted service statute were at odds. In this connection, it should be noted that in the Jaftex case

Judge Friendly concurred in the result while rejecting the court's decision that construction was a matter for the federal courts.

It is the view of this Court that Judge Friendly probably has the better of the argument. Certainly this Court's decision would be greatly buttressed, if it were in line with the Tennessee courts' construction of the substituted service statute. Unfortunately, since Section 48–923 of T.C. was enacted in 1955, there has been no reported construction by any of the Tennessee courts of this statute. However, this Court may, in passing on this motion, derive support from previous interpretations by the Tennessee courts of the concept of "doing business".

There have been a full half dozen earlier Tennessee cases which throw light on the type of problem here presented by the motion. In Milan Milling, etc. Co. v. Gorten, 93 Tenn. 590, 27 S.W. 971, 972, 26 L.R.A. 135, an Indiana corporation agreed to "manufacture, deliver, and put in position" at Milan, Tennessee, certain milling machinery. This was done, and the purchaser paid in cash and notes, the latter secured by a first mortgage. The notes were discounted and the purchaser defaulted in payment. The trustee advertised the property for sale. The purchaser sought to enjoin the sale on the ground the installation was faulty and manufacturer had breached its contract. The Chancellor denied the foreclosure holding that the bank and manufacturer were foreign corporations, had not complied with the laws of Tennessee and could not bring suit. The Supreme Court reversed, holding that the manufacturer in manufacturing, and later adjusting the machinery in position in the state, was *not* carrying on business in the state but was engaged in interstate commerce.

Davis & Rankin Bldg. & Mfg. Co. v. Caigle, 53 S.W. 240, 242, Court of Chancery Appeals, is almost identical. Suit was brought by an Illinois corporation in Tennessee against a subscriber to stock in a proposed company which contracted with plaintiff for manufacture of a butter and cheese factory at Grundy, Tennessee.

The Court, citing the Gorten case, said "for the purpose of erecting a single plant" it was not necessary that plaintiff, a foreign corporation, file an abstract of the charter with the Secretary of State, leaving the clear implication it was not doing business in the State.

Richmond Screw Anchor Co. v. Minter, 156 Tenn. 19, 300 S.W. 574, is also similar. The Court held that foreign corporations which made a contract for the furnishing of materials and the installation thereof in the John Sevier Hotel in the state were involved in a single and isolated transaction and not "doing business" within the state so as to be penalized for noncompliance with the foreign corporations' statute.

Friedman v. Georgia Showcase Co., 27 Tenn.App. 574, 183 S.W.2d 9, involved the right of the Georgia company to repossess show cases it had constructed in Alabama and installed in Tennessee. The installation was by separate contract and involved the employment of several workmen living in Tennessee. The Court held that the manufacture in Alabama and shipment into Tennessee clearly involved interstate business and the installation of the fixtures constituted merely an incident of the sale and did not require domestication.

These four cases give support to the view that the corporate defendants in this case would not be deemed by the Tennessee courts to be doing business in Tennessee and presumably would not be subject to substituted service. But there are two cases from the Tennessee courts involving installation of materials manufactured outside the state which on their facts were held to involve "doing business" within the State.

The first of these cases is Peck-Williamson Heating & Ventilating Co. v. McKnight & Merz et al., 140 Tenn. 563, 575, 205 S.W. 419. In this case, the heating company, an Ohio corporation, contracted to furnish and install heating and ventilating equipment for the Lyric Theatre in Jackson, Tennessee. Half of the consideration was to be paid on delivery and half on completion of the work. A check issued for payment of the work was turned down by the bank. The heating company brought suit in the Chancery Court of Madison County to enforce a mechanic's lien. The Chancellor, after allowing certain offsets, held for plaintiff. Defendant appealed and the decision was reversed with instructions to dismiss. The Court reasoned that 42% of the cost was the installation, that the equipment sent was not so complicated that it required an expert for installation. Also, it appeared that on five different occasions plaintiff had installed such equipment in Tennessee. The following quotation is interesting in that the Court purportedly relied on a United States Supreme Court case and in effect overruled the Gorten case.

"We think it quite clear that these facts *show a doing of business* in Tennessee by a foreign corporation which had not complied with our law authorizing the doing of such business. Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828. In that case it was held that, where a foreign corporation sold lightning rods to a resident of Georgia, with an agreement to install them on the house of the purchaser, this was not an interstate commerce transaction; that the matter of installation was a doing business within the state, it not appearing that it was an essential and necessary part of the sale of the particular machinery that the seller should install it. See, also, Palm Vacuum Cleaner Co. v. Bjornstad, 136 Minn. 38, 161 N.W. 215, L.R.A. 1917C, 1012, and note thereto. It will be seen from the cases cited in the note that the rule stated in Browning v. Waycross has been very generally followed. The question being a federal one, it is the duty of the state supreme courts to follow the decisions of the Supreme Court of the United States in respect thereto. We had a case, decided some years ago, Milan Milling Co. v. Gor-

ten, 93 Tenn. (9 Pick.), 590, 27 S.W. 971, 26 L.R.A. 135, holding that, where certain milling machinery was furnished by a foreign corporation to a purchaser in this state, the fact of installation by the seller did not affect the interstate character of the transaction. It does not appear from the report of the case to what extent work was done in effecting the installation, nor whether the machinery was of such a complicated nature that it was essential that the seller should itself install the plant. If there be indeed a conflict, that case must yield to the decision of the Supreme Court of the United States above referred to, to whatever extent there may be conflict between the two. * * *" (Emphasis added.) 140 Tenn. at page 575, 205 S.W. at page 422.

This case was, of course, decided before Erie v. Tompkins.

The other case is Lummus Cotton Gin Co. v. Arnold, 151 Tenn. 540, 549–556, 269 S.W. 706, 710, where a foreign corporation sold a ginning machine to a resident in Tennessee and as part consideration agreed to erect and install such machine. Although it appeared plaintiff maintained an office and a stock of repair parts in Tennessee, the Court, in denying recovery, rested its decision on the principle that installation by the plaintiff was not "an essential and necessary part of the sale of the particular machinery", citing Browning v. Waycross, infra, and the McKnight & Merz case.

■ Applying these principles to the case at hand, it appears from the contract with Ferguson that the total bid for fabricating and installing the three towers was $9,430 and that the installation cost as revealed in the bid of Wood and the installation order of Stainless Construction Company was approximately one-third of that amount, or $3,000. Furthermore, it does not appear that installation was so complicated as to require the work of the fabricator. The work pretty clearly involved "doing business" in Tennessee. The similarity of the McKnight & Merz case is striking. On the other hand, between March 1955 and the date of the contract with Ferguson, defendant corporations had sold two other towers in Tennessee. However, since they did not erect them, the aspect of a continuing business is lacking.

Nevertheless, on the authority of the McKnight & Merz case, this Court is of the opinion that the facts show the corporate defendants were "doing business" in Tennessee and subject to the provisions of Sec. 48–923 of the T.C., provided it is found that Wood was not an independent contractor. See cases collected in 11 A.L.R. 614 and in 101 A.L.R. 356.

■ That Wood was not, is apparent. Article XV of the Ferguson contract provided that no part thereof shall be subcontracted without the approval of the contractor and Commission. The affidavit of Mr. McAuley and the other affidavits and exhibits are devoid of any evidence of such an assignment. Moreover, Article XVI of the contract with Ferguson required the subcontractor to give "his personal superintendence to the work or have a competent foreman or superintendent satisfactory to the contractor on the work at all times during the progress of the work with authority to act for him". In the absence of evidence of an assignment or novation, Wood was clearly the agent of defendant Stainless Construction Company.

It is the opinion of the Court that the motion to dismiss must be denied. The motion for an oral hearing is, likewise, denied.